# STATE v. GRACE SMITH.
# STATE v. JACK JANSENE.[1]

March 22, 1946.

No. 34,022.

*F. Gordon Wright,* for appellants.

*R. S. Wiggin,* City Attorney, and *Joseph A. Hadley,* Assistant City Attorney, for the State.

[1]Reported in 22 N. W. (2d) 318.

THOMAS GALLAGHER, JUSTICE.

Defendant Grace Smith was convicted in the municipal court of Minneapolis of violating section 2-'F' of the so-called Minneapolis traffic ordinance, which makes it unlawful for any person to drive or operate a motor vehicle in the city while under the influence of intoxicating liquor.

Defendant Jack Jansene was convicted of violating section 2-'C' thereof, which makes it unlawful for any person having possession or control of a motor vehicle to allow the same to be driven or operated by a person prohibited therefrom under section 2-'F'.

The cases were tried together, and this is a consolidated appeal from the trial court's order denying defendants' motion for a new trial.

During the afternoon of November 14, 1944, defendants had been riding on a motorcycle owned by defendant Jansene. They stopped at "The Flame," a tavern on Nicollet avenue near East Fifteenth street in Minneapolis, at about eight p. m. that date, parking the motorcycle on the street in front of it. While at "The Flame," defendant Grace Smith consumed several alcoholic drinks. It is undisputed that she then became intoxicated and was in that condition at the time of the subsequent accident hereinafter described.

On account of a heavy rain, defendant Jansene, believing it impractical further to use his motorcycle, telephoned his sister, Gladys Jansene, to bring her automobile to "The Flame" to take defendants to their homes. She arrived there about nine p. m. Immediately thereafter the motorcycle was started by one of the defendants and operated in a northerly direction along Nicollet avenue across East Fifteenth street, followed by Gladys Jansene in her car. Somewhere near that point, the motorcycle came in contact with one Louise Nelson, throwing her to the pavement and also upsetting the motorcycle. Shortly thereafter, a police car with two officers arrived at the scene of the accident. In response to inquiries of said officers, defendant Grace Smith stated to them in the presence of several witnesses that she had been driving the motorcycle at the time of the accident; that she had been going

about 25 miles an hour; that she had met defendant Jansene, the owner of the motorcycle, about 5:30 that afternoon and had driven it with his permission. Asked by the police officers if he had given her permission to drive the motorcycle, defendant Jansene responded: "Yes. * * * I only had given her a single lesson." In the presence of the officers, he then said to defendant Smith: "I should never have let you take it." In response to further questions, defendant Smith insisted that she was the driver of the motorcycle at the time of the accident. The officers "observed" Gladys Jansene, who was sitting in her car immediately back of the motorcycle, and asked her if she had witnessed the accident, to which she responded "No."

At the trial, defendants, while not denying that they had made the foregoing statements at the time of the accident, gave the impression by their testimony that the information given the officers then was untrue. Jansene testified that defendant Smith was not on the motorcycle at the time and that he (Jansene) was operating it alone; that defendant Smith was riding in the front seat of the automobile driven by Gladys Jansene immediately behind the motorcycle. He testified that he was momentarily knocked out after the accident; that he was dimly aware that someone tried to help him to his feet; and that he eventually got up and righted the machine and saw the injured pedestrian, Louise Nelson, sitting in the street. Gladys Jansene testified that Grace Smith was with her in the car and that after the accident the latter went to Jansene and Louise Nelson to assist them. When asked whether she remembered anything about the accident, Grace Smith said: "I really don't, and if the officer said I did things, it must be so because I don't remember what happened." In their testimony the police officers related their prior conversation with the defendants and the statements made by them as above described. Louise Nelson, the injured pedestrian, testified that defendant Smith was the driver of the motorcycle at the time it collided with her and that defendant Jansene was riding on the back thereof. She further

362

accused defendant Smith of being under the influence of liquor and of attempting to assault and strangle her after the accident.

Two other witnesses testified on behalf of the state. One of them testified that she had observed defendant Smith assault Louise Nelson after the accident and had heard her admit several times to the police officers that she was the driver of the motorcycle. The other witness testified that he had heard defendant Jansene tell the police officers that he owned the motorcycle and that defendant Smith was driving it when it collided with Louise Nelson.

On cross-examination, one of the officers testified that while taking Louise Nelson to the hospital she made the statement to him that she had not observed who was operating the motorcycle at the time it came in contact with her. This statement was denied by Miss Nelson, who further testified that because of her mental condition following the accident she had no recollection of what she said to the officers.

On the foregoing conflicting evidence the court found defendants guilty.

After the trial, a want ad seeking witnesses to the accident was published in the *Minneapolis Star Journal* at the instance and request of defendants. As a result thereof, defendants assert that two new witnesses were produced, to wit, Russell Johnson and Warren Klaer. Their affidavits were submitted in support of defendants' motion for a new trial on the grounds of newly discovered evidence. Also submitted therewith was the affidavit of Anthony Costello, an employe at "The Flame."

Russell Johnson in his affidavit set forth that at the time of the accident he was a passenger in an automobile proceeding north on Nicollet avenue behind another car (the Gladys Jansene car), which in turn was following a motorcycle; that he saw the accident and that at that time the defendant Jansene was the operator of the motorcycle and defendant Smith was not on it or about it; that immediately after the accident he observed a woman get out of the automobile in front of him and run forward to the assistance of Jansene and the injured pedestrian. When subsequently inter-

viewed by police officers, however, he limited the foregoing affidavit and asserted merely that as he drove past the accident he observed a motorcycle on its side, with a man and a woman on the pavement beside it; that he did not see the motorcycle or anyone until he passed the car immediately in front of him; that he observed a woman jump out of the car in front of him and run toward the motorcycle after the collision.

Warren Klaer in his affidavit set forth that he was in the vicinity at the time of the accident; that just prior thereto he had noticed a motorcycle being started by a man and proceeding north on Nicollet avenue, followed by an automobile; that after the contact he looked around and noticed a motorcycle upset with a man and a woman lying next to it; that he ran to help the parties involved and was certain that there was only one person on the motorcycle at the time and that no woman was riding upon it.

The affidavit of Anthony Costello set forth that he had observed defendant Jansene take the motorcycle from in front of "The Flame," get astride it, and start north with it on Nicollet avenue, and that defendant Grace Smith was not riding upon it at the time it left "The Flame."

In opposition to defendants' motion, the state submitted the affidavit of William H. Eckholdt, assistant city attorney, wherein he set forth certain newspaper clippings from the *Minneapolis Daily Times*, the *Minneapolis Star-Journal*, and the *Minneapolis Morning Tribune*, appearing on November 15, 17, 18, 22, 23, 27, and 30, 1944, in which rather prominent publicity was given to defendants' trial, the testimony produced therein, and the final outcome thereof. Said clippings gave an account of the various trial proceedings somewhat in conflict with the testimony actually submitted. The clippings were submitted in support of the state's contention that it was unlikely that the new witnesses would have failed to come forth after such publicity and yet would have come forward to testify in response to the relatively obscure want ads above referred to.

On appeal, defendants assert (1) that the trial court abused its discretion in denying their motion for a new trial on the ground of newly discovered evidence; and (2) that it erred in refusing to strike from the state's affidavits as prejudicial the newspaper clippings above referred to.

■ The rule is well settled that the granting of new trials on the ground of newly discovered evidence rests largely in the discretion of the trial court, and that such discretion is to be exercised cautiously and only in the interests of substantial justice. 5 Dunnell, Dig. & Supp. § 7123, and cases cited. If it appears that the trial court has fairly exercised its discretion in denying a motion for a new trial on the ground of newly discovered evidence, this court will not interfere with such determination. 5 Dunnell, Dig. & Supp. § 7125.

Likewise, it is well settled that a new trial will not be granted for newly discovered evidence which is merely cumulative or corroborative of the evidence introduced at the trial. 5 Dunnell, Dig. & Supp. § 7130, and cases cited. Further, where different persons may reasonably draw different conclusions from such newly discovered evidence, we have held that the verdict should not be disturbed. 5 Dunnell, Dig. & Supp. § 7142, and cases cited. With these rules in mind, an examination of the record clearly indicates that the trial court here was not guilty of an abuse of discretion in denying defendants' motion for a new trial. The affidavits of Warren Klaer and Russell Johnson are purely cumulative. The affidavit of Russell Johnson is somewhat in conflict with his subsequent written statement. The affidavits of both Johnson and Klaer are merely corroborative of the testimony given by three witnesses at the trial and are not of such a controlling character that we can state that they would be productive of an opposite result on the merits in the event of a new trial. 5 Dunnell, Dig. & Supp. § 7131. The affidavit of Anthony Costello obviously could have been obtained prior to the first trial had the defendants made inquiry or used reasonable diligence to determine if any of the employes of "The Flame" had observed defendants at the time the

motorcycle left the place. Further, the evidence developed thereby would seem to be merely cumulative and corroborative of the testimony submitted by defendants at the time of the trial. Under the circumstances, it is clear that the court below did not abuse its discretion in denying defendants' motion.

■ The newspaper clippings attached to the affidavits submitted by the state in opposition to defendants' motion were submitted on the issue of diligence and for the purpose of casting doŭbt on the credibility of the affiants whose affidavits were submitted in connection with the motion. It is the state's contention that the newspaper articles and the publicity indicated would have been more likely to produce witnesses than the obscure ad in the classified section of the newspaper. Since our decision here does not go to the question of whether defendants failed to exercise due diligence in producing the witnesses Klaer and Johnson, it would seem that the submission of these newspaper clippings was immaterial and would not affect the outcome of the case in any event. The case was tried by the court without a jury. The same court passed upon defendants' motion for a new trial. It is questionable whether it would have been influenced one way or the other by the clippings insofar as the merits are concerned. While newspaper articles which give an incorrect or biased account of trial proceedings or which distort the evidence may, under certain circumstances, be prejudicial to the extent of requiring a new trial, such is hardly the case here. Under the facts here present, we hold that the trial court did not commit prejudicial error in refusing to strike the clippings from the affidavits submitted by the state in opposition to defendants' motion.

Affirmed.

Mr. Justice Matson took no part in the consideration or decision of this case.