# STATE v. FRANCIS E. WARREN.

89 N. W. (2d) 702.

April 25, 1958—No. 37,253.

*A. O. Sletvold,* for appellant.

*Miles Lord,* Attorney General, *John R. Murphy,* Assistant Attorney General, and *Vance N. Thysell,* County Attorney, for respondent.

MURPHY, JUSTICE.

The defendant, Francis E. Warren, was convicted and sentenced on a charge of second-degree robbery as defined in M. S. A. 619.43. He was committed to the Minnesota state prison at Stillwater, Minnesota, at hard labor until duly released by operation of law or by act of the proper authorities. The maximum sentence provided by statute is a term of 15 years. The defendant appeals from the order denying his motion for a new trial.

The appeal raises two issues: (1) Whether the evidence at the trial sustained a verdict of guilty against the defendant; and (2) whether material evidence, newly discovered, which with reasonable diligence could not have been discovered and produced at trial, warranted a new trial in this case. Because of our determination of the second issue, it is not necessary for us to discuss the first.

The record shows that at 1:30 a. m. on July 4, 1956, David Wilson, the complaining witness, a 15-year-old boy, was found lying on the boulevard of a residential street in Moorhead, Minnesota. He was unconscious at the time and had a bruise in back of his ear. He was taken to a hospital and, soon after recovering consciousness, told police that some Indians had attacked him in a park and robbed him. Later he changed his story.

He testified that on the morning of July 3, 1956, he came to Moorhead with his folks, who resided on a nearby farm. He left his folks, intending to go to a show. He was supposed to contact his sister, who resided in Fargo, and ride back to the farm with her at about 5 p. m. In the interval between 9 a. m., when he left his folks, and noontime, he said that he walked over to Fargo and stopped at the swimming pool. He says that about 12:30 p. m. he met two Indian men in an automobile on the streets in Fargo, who invited him to go for a ride. He accepted and got in the front seat between them. The car was a 1940 Chevrolet, green with a brown top. He said he knew the driver of the car, having met him a month before with his father at a tavern at the trading town of Kragnes, Minnesota. This Indian, who was tall with a mustache, was well acquainted with his Uncle Ed, who operated a summer resort at Ponsford, Minnesota. He said the three of them drove about the city of Moorhead and the vicinity all afternoon, during

which time they stopped at the airport. At about 6 p. m. they pulled into a side road, and the two men began drinking beer. Although David was supposed to call his sister so as to go home with her about 5 p. m., he said nothing to the men about this, and at no time did he ask to be taken home or to get out of the car. It appears that the men had four or five 6-packs of beer, most of which they drank during the course of the afternoon and evening. At about 10:30 p. m. they parked the car on Highway No. 75 a short distance outside of the city of Moorhead and, while the Indians were drinking beer, one of them asked David if he had any money. He said he had $2, which the driver asked to borrow. The driver said he wanted the money for gasoline to get back to Ponsford. David refused and attempted to get out of the car. At that point Warren, the defendant, struck him with a club. He said he blacked out momentarily and, as he came to, he felt the driver of the car taking the $2 from his pocket. Later they drove back to Moorhead, stopping on a residential street. The driver told David that he would kill his Uncle Edward if he told anyone what had happened and ordered him to get out and lie on the boulevard. The men remained in the car parked in the street. After lying on the boulevard for 10 or 15 minutes, David raised his head and looked up. At this point he said Warren got out of the car and struck him again with the club. During the entire time he was with these men in the car, a period of 12 hours, neither he nor the men got out of the car.

David gave descriptions of the two men to the police officers. He described the driver in detail as a tall Indian with a mustache whom he had met a short time before at Kragnes, Minnesota. He had also met this Indian's wife and mother. That during the visit he had with this particular Indian at Kragnes, his father was present and they discussed with him the subject of David's Uncle Edward, who lived in the same area as the tall Indian who was acquainted with David's uncle and had been at his resort. They discussed the subjects of hunting and fishing. He said that about the only conversation he had during the 12 hours he was with these two men during their journeyings in and about the environs of Moorhead had to do with his Uncle Ed and the subject of hunting and fishing. He had no conversation whatever with the defendant, whom he identified as the other passenger in the car. He

identified the defendant as being an Indian who wore a brown duckbill cap and high laced shoes.

The driver of the car was not apprehended, but on the basis of the description given by David, the defendant, Warren, was apprehended and brought to the hospital for identification by David. The defendant did not know he was being identified at the time. He was taken to the hospital where he stood in the hallway outside of the door to the room in which David was convalescing. He was placed in a position outside the door where David had an opportunity to view him through a crack between the hinges of the door, after which he informed the sheriff that the man who stood in the hallway was his assailant. This identification, with the statement which the defendant is supposed to have made before the policeman had told him the purpose of his arrest to the effect that he "didn't slug anybody," was considered sufficient to present an information charging the defendant with the offense of robbery in the second degree.

The defendant, an ex-serviceman with no previous record, denied knowing a tall, thin, mustached Indian. He said that he did not know of a green and brown 1940 Chevrolet and denied knowing David Wilson. He said that he had spent July 3rd drinking beer with friends in taverns in Moorhead. Two of his friends testified that they were drinking with him that day. No one saw David with the defendant, nor was there any testimony to implicate him outside of David's story. On this evidence the defendant was found guilty by the jury.

After the trial the defendant's attorney discovered a tall, thin, mustached Indian named Palmer Brunette. It is not disputed that Brunette could not have been located by the defense before the trial. Brunette admitted that he was acquainted with David's uncle, Eddie Wilson, who operated the resort at Ponsford, that he lived in that vicinity, and that he was acquainted with David and his father, whom he had met at Kragnes a short time before. After Brunette was located, he was taken before David, who said that he was indeed the man he had seen before at the tavern at Kragnes but was not the particular Indian who drove the car on the day of the offense. On the basis of this newly discovered evidence, the defendant moved for a new trial.

The state's case against the defendant was by no means impressive.

In spite of the attenuated character of the state's proof, it was sufficient to present an issue to the jury, and, were it not for the impeaching character of the evidence presented in the motion for a new trial, we would say that it is not for this court to rationalize how the jury came to find one way when they could just as well have found to the contrary.

■ It is well established that a new trial is not to be granted for newly discovered evidence unless it is likely that the new evidence will result in a verdict for the party asking for the new trial. Lampsen v. Brander, 28 Minn. 526, 11 N. W. 94; Peck v. Small, 35 Minn. 465, 29 N. W. 69; State v. Smith, 221 Minn. 359, 22 N. W. (2d) 318; 14 Dunnell, Dig. (3 ed.) § 7131; State v. Bergeson, 203 Minn. 88, 279 N. W. 837.

■ Although we have held that the determination of whether the new evidence will change the result is within the sound discretion of the trial court,[1] this court has often held that a trial court abused its discretion in refusing a new trial when it was manifest from the record that the new evidence would result in a verdict for the party seeking the new trial. Worrlein v. Maier, 177 Minn. 474, 225 N. W. 399; State v. Myers, 154 Minn. 242, 191 N. W. 597. It is our view that the evidence against the defendant in this case is so tenuous that the new evidence will in all likelihood change the results on a new trial.

■ David's testimony is not convincing. It seems unlikely that three persons would remain in a car for 12 hours, under conditions detailed by the complaining witness, without getting out of the car at least once. It is even more unlikely that the two men, having attacked and robbed a boy in a lonely spot, would drive back to the town and let him out in a residential district. Moreover, it is highly unbelievable that two men after having let the boy out of the car would sit and wait in the street for 10 to 15 minutes before making a getaway. There is no evidence to link the defendant with the crime apart from David's identification of him. There was no testimony that Warren had ever

---

[1]Lampsen v. Brander, 28 Minn. 526, 11 N. W. 94; Peck v. Small, 35 Minn. 465, 29 N. W. 69; Merek v. S. J. Groves & Sons Co. 200 Minn. 418, 274 N. W. 402; Skog v. Pomush, 219 Minn. 322, 17 N. W. (2d) 641; 14 Dunnell, Dig. (3 ed.) § 7125, and cases cited.

been seen with David or with the tall, thin, mustached Indian, or that he was seen riding in a green and brown Chevrolet. Neither the car nor its driver was ever found.

A persuasive reason for granting a new trial derives from the circumstance that, when the motion for a new trial on the ground of newly discovered evidence was being argued in the trial court, the county attorney admitted that the sheriff's office was aware of Palmer Brunette's identity from the beginning. The prosecution was aware that Brunette was the tall, mustached Indian whom David had met at Kragnes, who admittedly lived in the vicinity of Ponsford and was a friend of David's Uncle Ed. The county attorney said:

"He had been checked out before the time of the trial, and there was no question in our minds that he was not involved in this affair * * *."

The state now says that the admitted erroneous description of the driver cannot affect the verdict—that David's identification of defendant is sufficient to support the verdict. The trouble with this argument is that it ignores the fact that David's definite and persuasive testimony as to the identity of the driver of the automobile gave to the state's case a substance and credibility which may well have determined the outcome. The witness should have been told, before he testified, that he was mistaken as to the identity of the driver. It was obvious that he was not set straight on this point. The complaining witness was admittedly completely wrong in his identification of the driver. The margin for error as to the identification of the passenger is much greater. Had the jury known how wrong the witness was in his identification of the driver, it is doubtful that they would have believed his testimony with reference to the identification of the defendant.

It appears from the record that, when Warren was taken into custody and confined to the county jail, he signed a register giving the sheriff permission to open his mail. When his wife testified, she was cross-examined by the county attorney with reference to certain statements made by her in letters written to the defendant while he was in the county jail. None of these statements had any relevance or any bearing whatever as to the issues involved in the prosecution. If an objection had been made to this line of examination, the court would

probably have sustained it for it is apparent that the communication was privileged within the provisions of M. S. A. 595.02. The fact that the husband was in custody of the sheriff and consented to the opening of his mail did not deprive him of the benefit of the statute, which provides that neither a husband nor wife, without the consent of the other, may be examined as to any communication made by one to the other during marriage. While this question is not before us, it should be observed that the use of information acquired by the prosecution in this manner, particularly where it is unrelated to an issue involved in the prosecution, is improper and should be avoided on retrial.

Reversed and new trial granted.

DELL, CHIEF JUSTICE (dissenting).

I dissent. The complaining witness, David Wilson, who lives about 2 miles east of Kragnes, Minnesota, drove to Moorhead with his folks on July 3, 1956. He intended to contact his sister and ride home with her that afternoon. After arriving in Moorhead he walked to Fargo and while there "walked around and went over by the swimming pool and started back to Moorhead again." On his way back to Moorhead at the "Corner Hotel" he met two Indians who were sitting in a car. After asking him where he was going, they offered to take him home. He accepted and entered what he described as about a 1940 Chevrolet automobile. He said he had seen the driver of the automobile out at Kragnes before. The Indians had four to six packs of beer, most of which they consumed while driving various places. Finally the driver asked David if he had any money and when David told him he had $2 he asked whether he could borrow it. David said "No, I have been saving it." David then tried to get out of the car but the defendant, whom he had never known before, stopped him from doing so and struck him on the head with a club while the driver reached into his pocket and stole his money. They then drove back to Moorhead where David was told to get out of the car and lie down on the ground, which he did. The defendant then got out of the car and struck him on the head with the club again. He became unconscious and remained so until found.

At about 1:30 a. m. Gerald Keogh, a 20-year-old first-aid instructor, found David and tried to arouse him but was unable to do so because

of his unconsciousness. Keogh described the injury and blood on David's head as well as his torn clothing. Norris Dahl, a Moorhead policeman, was called, who also described David's injuries and testified that he was semiconscious at the time and completely incoherent. He was taken by Dahl to St. Ansgar's Hospital in Moorhead. Both men testified that David had not been drinking.

Warren, wearing a pair of boots which David had described, was picked up and taken to the hospital where he was identified by David as the man who assaulted him. At the trial David also positively identified him. Moreover, John Sullivan, a Moorhead police officer, testified that, after Warren was apprehended but before he was told of the charge against him, he stated "What did you pick me up for? *I didn't slug anybody.*" (Italics supplied.) Upon this evidence and the record as a whole, in my opinion, there is ample reason for defendant's conviction.

The majority opinion grants a new trial because of newly discovered evidence. That evidence consists of an affidavit made by Palmer Brunette and one made by defendant's attorney. All that is material in Brunette's affidavit is that he is a tall, thin Indian with a mustache who resides at Ponsford, Minnesota; that he is acquainted with David's uncle and on June 24, 1956, he was in Kragnes and saw David and his father. At the trial David did testify that the driver of the automobile was a tall, thin Indian with a mustache whom he had previously seen at Kragnes. The affidavit of defendant's attorney states that after the conviction Brunette was brought to Moorhead, and he claims that David admitted that he was the tall, thin Indian with the mustache whom he had seen at Kragnes but "denied that he was the driver of the automobile in question."

The fact remains, however, that the identification of defendant is not affected by the newly discovered evidence nor does it affect David's claim that Brunette was not the driver of the automobile. It is not surprising to find some confusion in the testimony of a boy 15 years of age. Where a boy has been assaulted and rendered unconscious so as to require hospitalization, as was David in this instance, care should be exercised before a new trial is granted.

It is well settled that whether a new trial should be granted on the

ground of newly discovered evidence rests very largely in the discretion of the trial court. Such discretion is to be exercised cautiously and sparingly and only in the furtherance of substantial justice and to prevent manifest and grave injustice. If, from the record, it appears that the trial court has fairly exercised its discretion in denying a motion for a new trial on that ground, this court will not interfere. The inquiry here is not whether a new trial might have been properly granted upon the record but whether a refusal to grant it involved the violation of a clear legal right or a manifest abuse of judicial discretion. State v. Smith, 221 Minn. 359, 364, 22 N. W. (2d) 318, 320; 14 Dunnell, Dig. (3 ed.) §§ 7123, 7125.

Upon the record as a whole I am satisfied that the trial court was thoroughly justified in sustaining the conviction.