STATE of Minnesota, Respondent,

v.

Edward R. CLARK, Petitioner, Appellant.

No. 49974.

Supreme Court of Minnesota.

July 3, 1980.

C. Paul Jones, Public Defender and Ronald Haskvitz, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., Thomas Fabel, Deputy Atty. Gen. and Jane Prohaska, Asst. Atty. Gen., St. Paul, Harry Christian, County Atty., LeCenter, for respondent.

Heard before OTIS, KELLY and WAHL, JJ., and considered and decided by the court en banc.

KELLY, Justice.

Defendant was convicted of first-degree murder in the slaying of Barbara Jiminez. He later petitioned for post-conviction relief on various grounds, including evidentiary matters, prosecution suppression of discovery materials, severity of sentences, improper closing argument by prosecution, lack of probable cause for arrest or search, and insufficiency of evidence to support a conviction. The district court found against defendant on all issues and ordered judgment against the defendant. His appeal now arises from that order. We affirm.

This case arises out of the same set of facts as *State v. Clark*, 296 N.W.2d 359 (Minn.1980) (*Clark I*), filed herewith, which concerns defendant's appeal from the conviction of the murder of Michael Jiminez, the husband of the victim in the present case.

The evidence adduced at both trials was essentially the same, see 296 N.W.2d at 363–365, with the following relevant exceptions. The defendant did not testify in the present case, but part of his testimony from the trial in *Clark I* was introduced into evidence. Briefly, this prior testimony was that defendant picked up three hitchhikers along Interstate 80, west of Des Moines at a gas station about 6:00 to 6:30 p. m., April 21, 1974. The hitchhikers were two males and one female; one was carrying a sign stating the distance to Des Moines. Defendant could not state for certain whether two of the hitchhikers either were or were not the Jiminez couple. In this testimony, defendant also admitted to the ownership and possession of many of the items tying him to the scene of the crime, including the torn pink sheet found in his rented storage shelter that matched the sheet found near Barbara Jiminez's body. In addition, defendant admitted to cashing traveler's checks at Lake Tahoe and to throwing a boxful of items from his vehicle, much like the box found near Sakatah Lake State Park.

Also of significance is an item of evidence introduced in the trial in this case that was not introduced in *Clark I.* When the grand jury indictments of defendant were first issued, one of the counts was for first degree murder with intent to commit rape. The sheriff of Blue Earth County saw defendant in his cell on the day he had been informed of the indictments; defendant was sobbing with his head in his arms. The sheriff asked if there was anything he could do for defendant. Without looking up, defendant, said, "That girl wasn't raped." Then defendant looked up and said something like, "Oh, I thought you were the minister." There was no further conversation at that time.

Defendant was found guilty of the first degree murder of Barbara Jiminez after a trial that lasted from July 9 to 28, 1975, in Hennepin County (on a change of venue from LeSueur County). Defendant petitioned for post-conviction relief in the present case, and a hearing was held on that petition in LeSueur County District Court on May 10, 1978. On March 16, 1979, the court denied post-conviction relief and ordered judgment against the defendant. The defendant makes the present appeal from that order.

Many of the issues raised in *Clark I* and the present case are identical and have already been sufficiently discussed. Those include whether evidence, including photographs, of the circumstances surrounding Michael Jiminez's death were properly admitted, 296 N.W.2d at 368;[1] whether the prosecution failed to disclose material exculpatory evidence to defendant, 296 N.W. 2d at 370; whether defendant's arrest and the searches of his vehicle and rented storage shelter were lawful under the fourth amendment, 296 N.W.2d at 369; whether evidence of defendant's theft of the Ford Bronco was improperly admitted, 296 N.W.2d at 368;[2] and whether certain of the prosecution's questions and arguments constituted an improper comment on defendant's right to remain silent at the time of arrest or trial, 296 N.W.2d at 366 n. 1. A few questions remain that are raised only in the context of the present case.

The first issue we address is whether part of defendant's testimony in *Clark I* was properly admitted in the present case. Defendant contends that the prior testimony was given only because unlawfully obtained statements of his were admitted into evidence, and thus it was tainted by the same illegality that made the statements inadmissible.

---

1. This issue concerns precisely the same problem as the issue in *Clark I* whether evidence of Barbara Jiminez's murder was properly admitted in the prosecution of defendant for the murder of Michael Jiminez. We believe that the same resolution of the issue should obtain in each case.

2. Defendant's prior testimony on direct and cross-examination, but not the collateral evidence by Ed Newberg, concerning defendant's ownership and theft of the Ford Bronco was admitted in the present case. The opinion in *Clark I* deals fully with this issue.

The general rule for the admission of an accused's testimony in a prior trial is given succinctly in *United States v. Anderson*, 481 F.2d 685, 696 (4th Cir. 1973) (citations omitted), *aff'd on other grounds*, 417 U.S. 211, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974):

[T]estimony of a defendant given at another trial or hearing, is admissible, and this is true whether the defendant elects to testify in his own defense or not, * * * and whether he appeared as a defendant or a witness * * *. It is of no moment whether the former trial was for the same offense or for some other, * * * or whether the trial was a criminal or civil proceeding.

*Accord, e. g., Harrison v. United States*, 392 U.S. 219, 222, 88 S.Ct. 2008, 2010, 20 L.Ed.2d 1047 (1968); *State v. Robinson*, 202 Neb. 210, 274 N.W.2d 553, *cert. denied,* 444 U.S. 865, 100 S.Ct. 136, 62 L.Ed.2d 88 (1979).

If the prior testimony of defendant sought to be used was compelled by the admission of illegal evidence, however, it should be suppressed. *See Harrison v. United States*, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968). In *Harrison*, the claim was made by defendant that the admission of three undisputedly illegal confessions had compelled him to take the stand to refute them, a step he otherwise would not have taken. The Supreme Court put the burden on the government to show that the confessions had not compelled the prior testimony and found this showing lacking. The testimony was then held to be the fruit of the poisonous tree, (i. e., of the illegally admitted confessions) under *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). 392 U.S. at 223–26, 88 S.Ct. at 2010–12.

■ In the present case, defendant stated to California authorities that he had not been in Minnesota for three years after he had invoked his *Miranda* rights to remain silent and to have an attorney present during interrogation.[3] This statement was introduced in the State's case in chief in defendant's trial in *Clark I*, but was suppressed by the trial court in the instant case. After the defendant took the stand in the previous case, he was impeached on cross-examination, under the authority of *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), with the statement given to California police and other statements allegedly obtained in violation of *Miranda v. Arizona*, 384 U.S. 486, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Assuming that the introduction of the statement in *Clark I* was error, we hold today in that case that the error was harmless, stating,

The prosecutor's use of the statement in [his] case in chief could not have influenced defendant to take the stand to explain inconsistencies, since the only inconsistency was in the state's own evidence and that inconsistency was exculpatory. It is plain that defendant's [testifying] was prompted by the fact that the incriminating evidence, although circumstantial, was substantial, and defendant's presentation of his explanation of that evidence to the jury required that he, as the sole witness, testify.

296 N.W.2d at 266. The nature of the statement involved here contrasts strongly with the confessions of guilt that compelled the testimony in *Harrison v. United States*. Unlike the confessions involved in *Harrison*, it is inconceivable that the statement could have been a factor in defendant's decision to testify. We therefore hold here that defendant's prior testimony was not a product of the statement we assume to have been improperly admitted in *Clark I*.

Defendant further contends that evidence was admitted in the present case in violation of the statutory privilege against disclosure of confidential marital communications. *See* Minn.Stat. § 595.02(1) (1978). At trial defendant's wife Jere Clark took the stand and testified that she received a phone call from her husband at about 5:00 p. m. on April 22, 1974, that defendant

---

**3.** We have assumed without deciding that this statement was in response to "interrogation" under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). A discussion of this issue is given in *Clark I*, 296 N.W.2d 359.

arrived home in Michigan about 1:00 a. m. April 23, and that defendant thereafter visited his mother. On cross-examination over defense counsel's vigorous objection, the State was allowed to question Mrs. Clark about certain conversations with her husband not inquired into on direct examination. Approximately this same testimony was adduced from Mrs. Clark on cross-examination at defendant's trial for the murder of Michael, but no objection was made.

The State argues that the defendant's failure to object to the disclosure of the same testimony at the prior trial was a waiver of the privilege against disclosure of privileged communication in the trial currently under review. We agree. The basic reason for enforcing the marital communications privilege is that the injury that would result to the marital relationship by disclosure of confidential communications outweighs the benefit conveyed by disclosure to the judicial investigation of truth. 8 *Wigmore on Evidence* § 2332 (J. McNaughton ed. 1961); Note, *Marital Evidentiary Privilege in Minnesota*, 36 Minn.L. Rev. 251, 253 (1952). *See also Trammel v. United States*, 445 U.S. 40, 43, 100 S.Ct. 906, 908, 63 L.Ed.2d 186 (1980). Since the defendant waived the privilege in the prior proceeding by failing to object, and the information was made public, there remains no "confidence" to protect—no purpose to serve by exclusion of the same evidence in the current proceeding. *Cf. Fraser v. United States*, 145 F.2d 139, 145 (6th Cir.) *cert. denied*, 324 U.S. 849, 65 S.Ct. 684, 89 L.Ed. 1409 (1944) ("Assuming the order of the court compelling disclosure to have been erroneous as an invasion of privacy in communications between husband and wife, the disclosure, once made, is irrevocable. It is public property and may not be recalled.").

Once a "secret" is publicly disclosed, it serves little purpose in not allowing it to be restated. At the very least, it must be said that the investigation of truth outweighs the policies against the restatement of information already public.[4] We therefore hold that defendant had waived the privilege against disclosure of marital communications by failing to object in *Clark I*, and thus the same testimony was properly admitted in the present case.

The defendant next contends that a phone company official testifying for the defense was erroneously impeached by use of prior testimony that contained typographical errors.

At defendant's trial in *Clark I*, a phone company official brought phone records with him and testified that a call had been made to number 313–398–8443 in Royal Oaks, Michigan (the Clarks' home number), from a phone in a Belvidere, Illinois, oasis, adjacent to a tollway at 5:03 p. m. on April 22, 1974. Defendant's wife later testified that defendant had made the call.

The court reporter made a mistake at the first trial and printed the number testified to as 313–398–8663. When the phone company official testified to the correct number called at the trial under review, the prosecutor noted the discrepancy between the transcript of the previous trial and the present testimony and called it to the witness' attention in several questions on cross-examination. The witness consistently held to his story that the phone company records were correct and the transcript was wrong. The prosecutor also made reference to this discrepancy in closing argument. Although the defense counsel was aware that there might be a transcript error shortly before the phone company official testified, the prosecutor did not know of the error. The defense objections during this line of cross-examination were essentially based on grounds of repetition or argumentation, not of lack of foundation, and there was no objection to the final argument.

---

4. *State v. Warren*, 252 Minn. 261, 89 N.W.2d 702 (1958), does not contradict this conclusion. In dictum in that case we stated that allowing a sheriff to read personal letters from spouse to defendant did not waive defendant's marital communications privilege. Obviously, disclosure of such information to a sheriff is not quite so total as public testimony in open court. In addition, in *Warren*, the statements could have been excluded on ground of irrelevancy. 252 Minn. at 266–67, 89 N.W.2d at 707.

■ Although we are disturbed by the use of inaccurate information in the impeachment of a defense witness, we are convinced that any error in this case was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). First, it was extremely unlikely that the jury was much impressed with the impeachment. The actual telephone record went to the jury, and the phone company official adamantly and correctly insisted that the transcript was in error. Indeed, defendant's trial counsel testified that he was not too concerned about the impeachment because the jury had the phone records, and in his opinion they were the best evidence. Second, the phone call testimony was equivocal; the State's essential case was that Michael and Barbara had been killed on the night of April 21 or very early morning of April 22—a possibility left open by the pathologist. In view of the overwhelming evidence supporting the State's theory, the impeachment of the phone company official was harmless error.

■ The next issue we deal with concerns certain remarks made by the prosecutor in final argument. In final argument, the prosecutor at one point improperly suggested to the jury that they should convict the defendant because of the crime problem in general, as opposed to his individual guilt based on the evidence: thus the argument is much like closing arguments disapproved by this court in *State v. Clark*, 291 Minn. 79, 189 N.W.2d 167 (1971), and *City of St. Paul v. Jackson*, 293 Minn. 505, 198 N.W.2d 275 (1972).

However, the defense did not object or seek curative instructions, a factor that this court has said "weighs heavily" in its decision whether to reverse on that ground. *State v. Caron*, 300 Minn. 123, 127, 218 N.W.2d 197, 200 (1974). In addition, if the prosecutor's statement does constitute misconduct, it constitutes "less serious" misconduct, *see id.* at 128, 218 N.W.2d at 200, and thus the standard for reversal is "whether the misconduct likely played a substantial part in influencing the jury to convict." *Id.*

Although this type of prosecutorial argument should not be encouraged, on the record as a whole it hardly seems that it played a substantial part in influencing the jury to convict. We are therefore convinced that this statement does not require reversal and a new trial.

■ The final issue we address is whether the evidence was sufficient to support a jury verdict of murder in the first degree. The applicable standard is given in *Clark I*, 296 N.W.2d at 371.

In the case under review, the defendant is tied to the scene of the crime at the time the crime happened by many pieces of evidence, most particularly the torn pink sheet found at the scene where Barbara's body was found, and the cartridge casing found beside Michael's body, which had been shot from defendant's .44 magnum rifle. In addition, there is defendant's spontaneous statement made at the Blue Earth jail upon hearing of an indictment for first degree murder with intent to rape—"That girl wasn't raped." The clear inference from this statement is that "that girl" was Barbara Jiminez and that defendant only could have known that she wasn't raped by having been at the scene of the crime.

The defendant contends, however, that there are reasonable hypotheses other than defendant's guilt that are consistent with the "circumstances" necessarily found by the jury. First, the defendant claims that the evidence does not show beyond a reasonable doubt that a crime had been committed because the evidence indicated that Barbara might have drowned rather than been strangled. The testimony on this issue was contested, however, and the jury was free to disregard the expert testimony that the cause of Barbara's death was drowning, and to accept the testimony that the cause of death was from strangulation. In addition, in view of the facts that Michael and Barbara were hitchhiking together, that they died at approximately the same time, and that Michael was clearly murdered by a shot in the back of the head, it seems reasonable for the jury to resolve any doubts as to whether Barbara's death was acciden-

tal in favor of the view, supported by much of the evidence, that it was not accidental, because of the reasonable inference that this was a single episode and a double murder.

Second, the defendant contends that the evidence shows that defendant made a phone call at 5:03 p. m. on April 22, 1974, but that the pathologist put Michael's likely time of death at three hours either side of midnight on the 22d, and that therefore defendant could not have killed Michael. The argument apparently would lead to the conclusion that defendant therefore could not have killed Barbara either. The jury, however, could have disbelieved Mrs. Clark that her husband had made the call. They also could have accepted the testimony that Michael possibly died earlier, especially in view of the fact that defendant's gun was identified as the weapon that fired the cartridge found next to Michael's dead body.

The circumstances most favorable to the jury verdict, and thus those the jury must have believed, are inconsistent with any rational hypothesis other than the guilt of the defendant.

We have carefully examined several other contentions by defendant and find them to be without merit.

Affirmed.