**STATE of Minnesota, Respondent,**

v.

**Donald Dean JACOBSON, Appellant.**

No. 81–852.

Supreme Court of Minnesota.

Dec. 3, 1982.

Dunlap, Keith, Finseth, Berndt & Sandberg and Jeffrey A. Hanson, Rochester, for appellant.

Warren Spannaus, Atty. Gen., and Kent G. Harbison, Asst. Atty. Gen., St. Paul, D.P. Mattson, County Atty., Rochester, for respondent.

SIMONETT, Justice.

Defendant appeals from a judgment of conviction for second-degree arson and defrauding an insurer and from an order denying a new trial. We conclude there should be a new trial because of newly discovered evidence and, therefore, reverse and remand.

On the evening of September 18, 1980, after closing hours, there was a fire in the Happy Warrior Food and Cocktail Lounge, a 3.2 bar in Rochester, Minnesota. Defendant Donald Dean Jacobson, owner of the bar business conducted on leased premises, was arrested and some 9 months later, on June 6, 1981, found guilty by a jury of second-degree arson and defrauding the fire insurance company. On appeal defendant Jacobson claims (1) the evidence is insufficient to sustain the guilty verdict, and (2) in any event, he is entitled to a new trial on the grounds of newly discovered evidence. (A third issue, involving assessment of a surcharge to the fine, is not reached.)

## I.

We discuss briefly, first, the issue of the sufficiency of the evidence produced at trial.

Defendant Jacobson was in the Happy Warrior alone sometime between a little after 9 p.m. to a little after 9:30 p.m. (The bar had closed early that evening, about 9 p.m., and the bartender on duty had left.) When Jacobson left the bar, he locked both the rear and front entrances. At 10:40 p.m. the fire department received a call that the bar was on fire. When the fire department arrived, both entrances were still locked and there was no sign of forcible entry. The physical evidence and expert testimony was sufficient to establish that the fire had been intentionally set.[1] As to Jacobson's motive, the state presented evidence that the defendant may have needed money; that the Happy Warrior was not a profitable business since it had converted from a liquor lounge to a 3.2 bar some 5 months before the fire; that defendant was tardy on his rent, at times overdrawn on his checking account, and that he had just borrowed $10,000 from the bank. After the fire the defendant submitted a claim for $50,000 fire loss.

In most arson cases, it is necessary for the state to prove its case with circumstantial evidence, since usually no one is on the premises at the time the fire is discovered. This trial was no different. The defense in arson cases is usually that the fire was accidental or, if arson, that it was set by someone else. Defendant Jacobson, at his trial, contended the fire must have been accidental in origin, and perhaps was caused by a cigarette left in a wastepaper basket. Jacobson did not argue that the fire was intentionally set by someone else. On cross-examination, he said he had never to his knowledge been threatened and that he had no reason to believe anyone wanted to cause him harm.

Thus the circumstantial evidence, here sketched in its broadest outline, was sufficient, considered by itself, to sustain the verdicts, and we reject defendant's contention he was entitled to acquittal as a matter of law. When, however, the evidence adduced at trial is considered in light of the newly discovered evidence, other inferences from the trial evidence take on added significance.

This leads us to events occurring after the trial.

## II.

A. On July 6, 1981, 30 days after the trial, defense counsel received a telephone call from another attorney in Rochester. This attorney said he had just learned from his son that an unidentified person was supposed to have heard something about who had set fire to the Happy Warrior some 10 months before. An investigation ensued, resulting in recorded interviews with, among others, Kelly French, Mary Bins, Gregory Beckman, and Randy Schumann. Kelly French, an 18-year-old acquaintance of Randy Schumann, stated that during February or March 1981 Schumann told her that he had helped burn down the Happy Warrior, and that she believed Schu-

---

1. The evidence was that there were two non-communicating fires approximately 32 feet apart which would have had to start independently of one another; and there was an "alli-gatoring" effect, a deep downward burning on the floor at both points of origin, indicating that an accelerant had been used to start the fire.

mann meant what he said, since she knew him "pretty good"; also, she said, Schumann warned her, while displaying a pistol, not to reveal this conversation to anyone. Mary Bins, also 18 and a friend of Kelly French, stated she had a conversation with Randy Schumann at a party in January or February 1981 in which Schumann told her that he had started the fire at the Happy Warrior to "get even" with Jacobson. Gregory Beckman, 24, stated that on two different occasions, once in the spring of 1981 and then again after the trial on July 18, 1981, that Schumann had told him that he had "torched" the Happy Warrior. Beckman, however, said he did not know if Schumann, an acquaintance, could be believed. Schumann denied any responsibility for the fire and denied making any statements about it; however, William Anton, the assistant police chief, stated in an affidavit that on July 30 Schumann told Anton that he, Schumann, was kidding when he mentioned the Happy Warrior fire to Beckman, thereby seemingly admitting he had made the statement to Beckman.

Defendant Jacobson and his two sons submitted affidavits. One son, an employee at the Happy Warrior, said that his keys, including his Happy Warrior key, were discovered missing from their customary place behind the bar in April 1980 and were never found, and that the door locks on the Happy Warrior were not thereafter changed. The other son stated that Randy Schumann had done repair work on his car some six times before the fire and on these occasions had possession of the son's keyring, which included the key to the Happy Warrior. Defendant Donald Jacobson stated that his daughter had been friends with Randy Schumann for 10 years but that Schumann was not welcome at the Jacobson home and that the daughter had been advised by her parents not to see Schumann. Defendant further stated that Schumann had been evicted from the Happy Warrior on one occasion prior to the fire.

■ B. The test for granting a new trial on the grounds of newly discovered evidence is twofold:

■ It must be shown that the evidence could not have been discovered before trial by due diligence and that the newly discovered evidence at the time of trial was not within the knowledge of the accused or is not merely cumulative.

■ It must also be shown that, in the event of a new trial, the newly discovered evidence will probably produce a different or more favorable result.

*State v. Klotter,* 274 Minn. 58, 64, 142 N.W.2d 568, 572 (1966).

The trial court denied the new trial motion, finding that Schumann's access to the Happy Warrior keys, if true, was evidence available to defendant at trial and not "newly discoverable." The trial court further concluded that Schumann had "a very low reputation for reliability in speech with respect to telling the truth."

■ 1. First of all, it seems to us that the evidence satisfies the test of being newly discovered. Clearly, the defendant had no way of knowing Schumann had made statements to others implicating himself until after the trial. The fact that a Happy Warrior key was missing for 6 months prior to the fire was a fact available to the defendant but the fact defendant's son had given Schumann his car keys, including the Happy Warrior key, on several occasions was not of any meaningful significance until defendant was aware of Schumann's possible involvement in the fire.

■ 2. The second requirement to be met for newly discovered evidence is that it will probably produce a different result at another trial. Here it must be kept in mind that proof at the first trial was largely circumstantial. The standard for upholding a conviction based on circumstantial evidence is as follows:

The circumstantial evidence in a criminal case is entitled to as much weight as any other kind of evidence so long as the circumstances proved are consistent with the hypothesis that the accused is guilty and inconsistent with any rational hypothesis except that of his guilt.

*State v. Morgan,* 290 Minn. 558, 561, 188 N.W.2d 917, 919 (1971); *State v. Kaster,* 211 Minn. 119, 121, 300 N.W. 897, 899 (1941).

Here the newly discovered evidence is not cumulative nor impeaching; rather, the evidence offers an alternative hypothesis inconsistent with defendant's guilt. The new evidence does not dispute the state's proof at the first trial that the fire was intentional but instead suggests that the fire was set by someone other than the defendant. Plainly, if believed, the new evidence probably would make a difference. At a new trial, the issue is not whether Randy Schumann is guilty of arson beyond a reasonable doubt but whether defendant is.

Once there is the likelihood that someone else may have set the fire in the Happy Warrior, the evidence of guilt at the first trial tends to be seen in a different light and to appear more tenuous. *See State v. Warren,* 252 Minn. 261, 265, 89 N.W.2d 702, 706 (1958). For example, the evidence of defendant's financial problems does not appear as strong as the state suggests. It was also shown at trial that at the time of the fire Jacobson had considerable financial leverage and had a net worth of approximately $285,000; that the bank was willing to loan defendant the $10,000 on an unsecured note, the proceeds being used for a new supper club business Jacobson was then constructing; that less than 6 months before the fire defendant had sold his liquor license on the Happy Warrior for $100,000, receiving $25,000 cash down with $30,000 to be paid by May 1, 1981, and the balance in 4 years; and that shortly before the fire the license purchaser had volunteered to prepay the $30,000 at a discount. It was also shown that the Happy Warrior had been listed for sale for $25,000 only a few weeks before the fire, the business then consisting of only good will and leasehold improvements on a 30-day lease. During 1980, de-

fendant had only one check written for insufficient funds, and this occurred when the check was cashed notwithstanding a stop payment order. Finally, as a second example of the trial evidence possibly being seen in a different light is the evidence that while defendant Jacobson was alone in the Happy Warrior the evening of the fire, the phone rang twice and both times Jacobson answered the phone, conduct arguably at odds with a person about to engage in arson.

■ 3. While the new evidence appears material, it is a close question if it is credible. The test is whether defendant has shown by a preponderance of the evidence, *Martin v. State,* 295 N.W.2d 76, 79 (Minn. 1980), that the new evidence is not so doubtful or unreliable in character as to make probable a different result on a new trial. *State v. Bergeson,* 203 Minn. 88, 89, 279 N.W. 837, 838 (1938). *See also State v. Hill,* 312 Minn. 514, 253 N.W.2d 378 (1977); *State v. Mastrian,* 285 Minn. 51, 171 N.W.2d 695 (1969). In considering this question, this court has before it the same affidavits and taped interviews that comprise the new evidence as did the trial court.

■ 4. While the new evidence may be questioned,[2] after carefully reviewing the record, we conclude that the credibility and materiality of the new evidence is of a character that requires a new trial. The new evidence is not so doubtful as to make a different result improbable and, in a matter of this importance, we think that a jury should be the final arbiter.

Reversed and remanded for a new trial.

KELLEY, J., took no part in the consideration or decision of this case.

---

**2.** Gregory Beckman thought Schumann was a "bullshitter" but Kelly French thought Schumann meant what he said to her, as did Mary Bins. One other witness said Schumann was at Dooley's bar the night of the fire, but it appears this witness only testified that she knew Schumann was in Dooley's bar at the

time she received a phone call informing her of the fire and not necessarily at any time earlier that evening.

We think, too, the manner in which the new evidence initially came to light, from sources apparently unrelated to the defendant, tends to lessen the danger of fabrication.