CERRO GORDO CHARITY, Plaintiff,

v.

FIREMAN'S FUND INSURANCE CO., Defendant.

CERRO GORDO CHARITY, an Iowa non-profit corporation, Plaintiff,

v.

NORTH AMERICAN LIFE AND CASUALTY CO., Defendant.

Civ. Nos. 4–83–251, 4–83–871.

United States District Court,
D. Minnesota,
Fourth Division.

Nov. 27, 1985.

Richard G. Mark, Michael Streater, Briggs and Morgan, Minneapolis, Minn., for plaintiff.

Steven D. Jamar, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, Minn., for defendant Fireman's Fund.

Robert S. Cragg, Cragg, Bailly, Gordon & McCollum, Minneapolis, Minn., for defendant North American Life.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

On September 27, 1985, after a three-week trial of the above-entitled matters, the jury returned a special verdict finding that Leonard Richards intentionally killed or caused to have May Wilson, the insured, killed as part of a fraudulent scheme to obtain insurance benefits in which Wilson was a mere pawn. It further found that Richards' fraudulent intent existed at the time the two North American Life and Casualty Co. (NALAC) policies were originally purchased. The jury also concluded that although Richards had no fraudulent intent at the time the policy was initially purchased, fraudulent intent existed when the Fireman's Fund insurance policy was last renewed. Fireman's Fund subsequently moved for, and the court issued, an order determining that the effective date of its final contract with May Wilson was June 1, 1981, entitling it to judgment in its favor. Judgment was entered in favor of Fireman's Fund on October 3, 1985, and for NALAC on October 8, 1985.

These matters are currently before the court upon plaintiff's motion for judgment notwithstanding the verdict (JNOV) and, alternatively, for a new trial on all issues except whether May Wilson's death resulted from an accident. In addition, Fireman's Fund has filed a cross-motion for dismissal on the grounds that Richards, creator and controller of Cerro Gordo through June 1983, refused to answer questions put to him. It also seeks an order changing the "no" answer on the Special Verdict to "yes" on the grounds that the Fireman's Fund's insurance policy was originally procured on December 1, 1980, rather than at an earlier time. The parties subsequently submitted responses to the motions and all materials were received by the court as of October 28, 1985.

*Cerro Gordo's Motions*

In determining a motion for JNOV under Fed.R.Civ.P. 50, the court is to consider the evidence and the inferences which may be drawn from it in a light most favorable to the prevailing party. *Polk v. Ford Motor Co.*, 529 F.2d 259, 267 (8th Cir.) (*en banc*), *cert. denied*, 426 U.S. 907, 96 S.Ct. 2229, 48 L.Ed.2d 832 (1976). The court must deny the motion if, in reviewing the evidence in this light, reasonable people could differ as to the conclusions to be drawn. *Id.*

The jury verdict in these cases is well-supported by the evidence. The insurers presented credible evidence on each of the issues contained in the special verdict enabling reasonable people to find that Richards caused or committed May Wilson's murder and that he did so pursuant to a fraudulent scheme. Similarly, from the evidence presented, reasonable people could differ as to the date the Fireman's Fund policy was originally obtained.

Plaintiff also asks for a new trial, arguing that the court erred in refusing to stay the proceedings until the Hennepin County criminal investigation files were available

as evidence, in admitting and rejecting evidence, and in instructing the jury.[1] It relies on the briefs and arguments that it has previously submitted to the court to support its motion.

The standard governing a motion for a new trial is broader than the JNOV standard in the sense that the court, in evaluating the weight of the evidence, may apply some independent scrutiny to determine whether a miscarriage of justice has occurred. *See, e.g., Bates v. Hensley,* 414 F.2d 1006, 1011 (8th Cir.1969). The court has carefully considered the points raised but finds plaintiff has not shown error in the various evidentiary rulings or the jury instructions. The basis for the court's rulings and instructions are set out in some detail in written orders and various portions of the record, but time did not permit much discussion about the admission of Dr. Guerrero's prior testimony.

Cerro Gordo contends that the court erred in allowing defendants to introduce the transcript of Dr. Guerrero's prior testimony in a 1979 conciliation court hearing. Dr. Guerrero is a psychiatrist who treated Leonard Richards and who Richards called to testify in 1979 in a number of actions brought by Richards against insurance companies to recover benefits for a 1977 hospitalization. Richards called Dr. Guerrero to prove medically necessary

treatment. The court ruled, over objection, that Richards had placed his mental and physical condition in issue, thereby waiving the doctor-patient privilege. Dr. Guerrero testified, among other things, that Richards told him that he had been managing his sister's financial affairs and that he made unveiled threats against May Wilson. No attempt was made by Richards to seek relief in a higher court.

Cerro Gordo relies on *Knudsen v. Peickert,* 301 Minn. 287, 221 N.W.2d 785 (1974) to maintain that under Minnesota law no waiver of the medical privilege occurs beyond the bounds of the action in which the privilege is waived. The insurers, by contrast, argue that Dr. Guerrero's testimony does not fall within the privilege, but that even if it did, any such privilege was waived after Dr. Guerrero testified in open court.[2]

*Minn.Stat.* § 595.02 subd. 1(d) governs the physician-patient privilege and provides in pertinent part:

> A licensed physician ... shall not, without the consent of his patient, be allowed to disclose any information or any opinion based thereon which he acquired in attending the patient in a professional capacity, and which was necessary to enable him to act in that capacity;...."[3]

1. Specifically, plaintiff argues that the court committed error in allowing defendants to introduce evidence of i) the HIP and other accidental death and dismemberment insurance owned by May Wilson, ii) the "Kruggerands" incident, iii) the carbon monoxide incident of March, 1982, iv) the churches and other corporations in which Leonard Richards was involved, and v) alleged "witness intimidation". Plaintiff states that the court further erred in allowing defendants to introduce the transcript of Dr. Guerrero's prior testimony, in allowing the defendants to call Leonard Richards, in precluding it from calling Jay Jaffe, its proposed expert, and in excluding evidence of settlement of certain May Wilson policies. Plaintiff also contends that the court's instructions on fraudulent procurement of insurance and the burden of proof were incorrect, and that the special verdict form inaccurately set forth the law on fraudulent procurement of insurance.

2. By Memorandum Opinion and Order dated April 30, 1985, this court held that the medical

records of Dr. Guerrero and the Golden Valley Health Center were privileged. Although the court considered the question of privilege a close one, no new arguments have been advanced by the insurers to persuade the court to reconsider its previous ruling. In the April order, the court did not address the issue of whether the physician-patient privilege was waived by Dr. Guerrero's conciliation court testimony.

3. The statute goes on to discuss the special situation of a deceased patient providing:

> [A]fter the decease of the patient, in an action to recover insurance benefits, where the insurance has been in existence two years or more, the beneficiaries shall be deemed to be the personal representatives of the deceased person for the purpose of waiving this privilege, and no oral or written waiver of the privilege shall have any binding force or effect except when made upon the trial or ex-

To ensure that the medical privilege exists as a shield and not a sword, Minn.R.Civ.P. 35.03 provides for a waiver of the privilege in certain situations. It states:

> If at any stage of an action a party voluntarily places in controversy the physical, mental or blood condition of himself, of a decedent, or a person under his control, such party thereby waives any privilege he may have in that action regarding the testimony of every person who was examined or may thereafter examine him or the person under his control in respect of the same mental, physical or blood condition.

The language of Rule 35.03 and subsequent case law indicate that when a waiver of medical privilege occurs, it is not a general wholesale waiver of the entire privilege. For example, a waiver of the privilege for one medical problem is not a waiver for an unrelated medical problem. *See, e.g., Derrick v. St. Paul City Railway Co.*, 252 Minn. 102, 89 N.W.2d 629 (1958). Similarly, a prior filing of an action for personal injuries does not automatically waive the party's medical privilege in a subsequent wrongful death suit, alleging negligent driving, brought against that party. *See, e.g., Knudson v. Peickert*, 301 Minn. 287, 221 N.W.2d 785 (1974).

Nonetheless, where a selective disclosure of confidential information occurs, a finding of limited waiver as to the same evidence is warranted. *See, e.g., State v. Clark*, 296 N.W.2d 372 (Minn.1980). (Where defendant waived marital privilege in prior trial and information was made public, no confidence remains to be protected and investigation of truth outweighs policies against restatement of information already made public.) In such a situation, the policy behind the medical privilege—encouraging the patient to reveal his or her condition by ensuring confidentiality—is not undermined. Disclosure breaches confidentiality. Because there is no "confidence" left to protect, there is no justifica- tion for recognizing the privilege and ignoring pertinent evidence. *Id.*

■ Applying these principles of Minnesota law to the instant situation, the court finds that the waiver of the medical privilege which occurred in 1979 is not a general waiver of Richards' privilege. It would therefore be inappropriate to allow the insurers access to Richards' medical records or areas of his medical privilege which were not previously disclosed.

■ On the other hand, the holding in *State v. Clark*, 296 N.W.2d 372 (Minn. 1980), and the policy reasons behind Minnesota's medical privilege dictate that the limited testimony previously taken in a public proceeding after a waiver of privilege under Minn.R.Civ.P. 35.03 be admitted in this action. Richards voluntarily brought suit in 1979 against various insurers to try to recover on insurance policies concerning his treatment with Dr. Guerrero. He specifically called Dr. Guerrero to the stand for that purpose, and the doctor's testimony was heard in open court and transcribed for the record. The instant actions to collect insurance proceeds were brought in the name of Cerro Gordo while Richards was its controlling voting member. The evidence at trial showed that Richards was the motivating force behind initiation of the suits and that his conduct, including his plans and intent, was a central issue in the cases.

Once Dr. Guerrero's testimony became public in the earlier proceeding, no "confidence" remained and no purpose is served by excluding the same relevant evidence in the instant proceedings. At a minimum, as stated in *State v. Clark*, 296 N.W.2d 372, 376 (Minn.1980), "the investigation of truth outweighs the policies against the restatement of information already made public." Over time, a judicial system that ignores information publicly disclosed and known risks losing its legitimacy as a truth-find-

---

amination where the evidence is offered or received.

Cerro Gordo emphasizes this portion of the rule, but it is clear from the punctuation and the plain meaning of the language that this part pertains only to the specific situation of a deceased patient. Thus, this portion of the rule is inapplicable in the instant cases.

ing process. *See*, Note, *Developments—Privileged Communications*, 98 Harv.L. Rev. 1450, 1643–1648 (1985). Under the circumstances presented, a finding of no waiver in the face of previous disclosure and waiver would extend the medical privilege unjustifiably. For these reasons, the court finds that the testimony of Dr. Guerrero was properly admitted.

*Motion of Fireman's Fund*

The motion is timely. The record shows that Fireman's Fund first filed its motion on October 18, 1985 and that the judgment was entered on October 3, 1985. Under Fed.R.Civ.P. 6(a) as amended in 1985, the motion is within the 10 day time period of Fed.R.Civ.P. 50, 52, 58, and 59. Because of the judgment entered in its favor on the jury's verdict and the court's prior ruling, however, it is unnecessary to reach the issues raised.

### ORDER

Accordingly, based on the above and all the files, records, and proceedings herein,

IT IS HEREBY ORDERED that

1. The motion of Cerro Gordo Charity for judgment notwithstanding the verdict, and, alternatively, for a new trial is denied.

2. The motion of Fireman's Fund Insurance Company for dismissal or for an order changing the "no" answer on the Jury Special Verdict to a "yes" answer is denied as moot.