**Donald D. JACOBSON, Respondent,**

v.

**ROCHESTER COMMUNICATIONS CORPORATION, INC., d.b.a. KWEB Radio Station, Appellant.**

**No. C9–87–442.**

Supreme Court of Minnesota.

Aug. 21, 1987.

Timothy R. Murphy, Audrey A. Zibelman, St. Paul, for appellant.

Richard W. Johnson, Red Wing, for respondent.

WAHL, Justice.

Respondent Donald Jacobson filed suit against petitioner Rochester Communications Corporation, Incorporated (KWEB) alleging he was defamed by an erroneous statement made in a radio news broadcast. Respondent sought compensatory and punitive damages. KWEB filed a motion for summary judgment, arguing that Jacobson was a limited purpose public figure and made no showing of malice. The trial court ruled that respondent was a private defamation plaintiff, and denied KWEB's motion for summary judgment. After ruling on the motions, and pursuant to Minn. R.Civ.App.P. 103.03(h)[1], the trial court certified two questions as important and doubtful:

Whether plaintiff Jacobson is a limited purpose public figure and therefore required to demonstrate the existence of actual malice to establish a prima facie case of defamation against defendant KWEB; and

Should KWEB be entitled to judgment in its favor as a matter of law due to plaintiff Jacobson's inability to establish a genuine issue of material fact on the existence of the actual malice requirement.

---

1. Minn.R.Civ.App.P. 103.03(h) states:
An appeal may be taken to the Court of Appeals:

\* \* \* \* \* \*

(h) if the trial court certifies that the question presented is important and doubtful, from an order which denies a motion to dismiss for failure to state a claim upon which relief can be granted or from an order which denies a motion for summary judgment.

The court of appeals in turn certified the questions to this court. We hold that respondent Jacobson is a private individual, not a limited purpose public figure for purposes of this defamation action, and is not required to show actual malice to establish a prima facie case. We need not address the second certified question from the trial court.[2]

## I.

The facts are not in dispute. From 1971 to 1980, Jacobson owned the Happy Warrior Cocktail Lounge, a bar featuring exotic dancers, located in Rochester, Minnesota. In 1980, a fire of suspicious origin damaged the lounge. Jacobson was charged with arson and insurance fraud in February 1981, and found guilty in June 1981. The trial court sentenced Jacobson to twenty-one months incarceration and fined him $10,000 but stayed execution of the sentence on condition Jacobson pay the fine, spend six months in county jail, and agree to supervised probation for five years.

Jacobson reported to the Olmsted County Jail and began serving his sentence on August 12, 1981. That same day, Jacobson's attorney requested the trial court to stay the jail sentence pending appeal of Jacobson's conviction. Five days later, the court granted Jacobson's request to stay the jail sentence.

On December 3, 1982, this court reversed Jacobson's conviction and remanded for a new trial in light of new evidence. State v. Jacobson, 326 N.W.2d 663 (Minn.1982). The same day, Jacobson gave an interview to the local newspaper regarding his case. Among the topics discussed was a description of Jacobson's activities during the appeal, including the fact that Jacobson had "been out of jail pending his appeal."

On January 13, 1983, a hearing was held to set the new date of trial, and to hear motions for substitution of attorneys. Eileen Colbenson, news director for KWEB, was covering the hearing for the radio station. Following the hearing, Colbenson returned to the studio where she phoned the county clerk's office to obtain additional information. Colbenson spoke with someone at the county clerk's office,[3] who erroneously informed her that Jacobson had been at Stillwater State Penitentiary prior to reversal. Based on the information, Colbenson broadcast a news story at 2:05, 3:05; and 5:05 p.m. that day stating that Jacobson "was convicted and [was] serving a sentence in Stillwater State Prison for arson in connection with the fire in the Happy Warrior Bar in September of 1980."

After the 5:05 p.m. broadcast, Colbenson received an anonymous call indicating that Jacobson had never served time in prison. Colbenson immediately amended the story to delete any reference to a prison sentence, and ran the amended story in subsequent broadcasts.

Following a change of venue, Jacobson was retried in Mower County where he was found not guilty of the criminal charges. Respondent then filed a defamation suit against KWEB, alleging its story indicating Jacobson was in Stillwater Prison was slanderous and published with malice. KWEB denied the charges, and moved for summary judgment, alleging Jacobson was a limited purpose public figure and had failed to show the statement was made with actual malice. The trial court denied KWEB's motion, ruling that Jacobson was a private individual for purposes of a defamation action and that therefore a negligence standard applied. The court found material issues of fact remained unresolved under the negligence standard of proof. After the trial court's ruling, KWEB moved to certify two issues as important and doubtful pursuant to Minn.R.Civ. App.P. 103.03(h). The trial court granted the motion, and we accepted review of the certified questions.

## II.

We are involved in this case with the continuing struggle "to define the proper

---

**2.** We also find the second question to have been inappropriately certified as important and doubtful under Minn.R.Civ.App.P. 103.03(h).

**3.** Colbenson did not obtain the name of the person with the clerk's office who provided her with information about Jacobson.

accommodation between the law of defamation and the freedoms of speech and press protected by the First Amendment." *Gertz v. Welch*, 418 U.S. 323, 325, 94 S.Ct. 2997, 3000, 41 L.Ed.2d 789 (1974). The issue of whether Jacobson is a limited purpose public figure presents us with the constitutional issue of whether plaintiff is a public or private defamation figure. One court has described attempting to distinguish between public and private defamation plaintiffs as akin to "trying to nail a jellyfish to the wall." *Rosanova v. Playboy Enterprises, Inc.*, 411 F.Supp. 440, 443 (S.D.Ga.1976), *aff'd*, 580 F.2d 859 (5th Cir. 1978). It is necessary to briefly review the development of first amendment defamation law in order to address this issue, beginning with the case of *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

In *Sullivan*, plaintiff was an Alabama public official who recovered general and punitive damages against the New York Times on instructions that general damages could be awarded on proof of common law malice. The Supreme Court reversed, holding a public official may not recover for defamation absent a showing of actual malice, defined as knowing falsity or reckless disregard of the truth or falsity of the publication. *Id.* at 279–80, 84 S.Ct. at 725–26. The court analyzed the issue as a balancing between an individual's reputational interests and the first amendment goal of assuring "unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *Id.* at 269, 84 S.Ct. at 720 (quoting *Roth v. United States*, 354 U.S. 476, 484, 77 S.Ct. 1304, 1308, 1 L.Ed.2d 1498 (1957)). The court concluded that the actual malice requirement was needed to protect the flow of free debate and information, because "erroneous statement[s] [are] inevitable in free debate, and * * * must be protected if

the freedoms of expression are to have the 'breathing space' that they 'need * * * to survive' * * *." *Id.* at 271–72, 84 S.Ct. at 721–22 (quoting *N.A.A.C.P. v. Button*, 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963)).

The court extended the actual malice standard to "public figures" in *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967). A majority of the court reasoned that public figures, even if they are not public officials, play influential roles in society and have access to the press, justifying stronger protection of the media in reporting on public figures. *Id.* at 163–64, 87 S.Ct. at 1995–96 (Warren, C.J., concurring). The court recognized that the guarantees of freedom of speech and press are "as much a guarantee to individuals of their personal right to make their thoughts public and put them before the community * * * as it is a social necessity required for the 'maintenance of our political system and an open society.'" *Id.* at 149, 87 S.Ct. at 1988 (quoting *Time, Inc. v. Hill*, 385 U.S. 374, 389, 87 S.Ct. 534, 543, 17 L.Ed.2d 456 (1967)).

In *Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971), a plurality of the court extended the actual malice standard to all matters of public interest regardless of the plaintiff's status. This issue-oriented approach was rejected, however, in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed. 789 (1974). In *Gertz*, plaintiff was labeled as a communist conspirator by the "American Opinion," a publication of the John Birch Society, for serving as attorney for a family whose son was murdered by a Chicago police officer. Rather than analyzing the public interest in the controversy, the court focused on whether the plaintiff was a public or private figure.[4] The court

---

**4.** The court stated:

Hypothetically, it may be possible for someone to become a public figure through no purposeful action of his own, but the instances of truly involuntary public figures must be exceedingly rare. For the most part those who attain this status have assumed roles of especial prominance in the affairs of society.

Some occupy positions of such persuasive power and influence that they are deemed public figures for all purposes. More commonly, those classified as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved. In either event, they invite attention and comment.

held that public figures, whether general or limited purpose, must satisfy the *New York Times* actual malice standard, while states were free to establish a fault standard for private individuals so long as it is not a strict liability standard. *Id.* at 345–47, 94 S.Ct. at 3009–3011. The court identified three types of public figures: the involuntary public figure, the general purpose public figure, and the limited purpose public figure. *Id.* at 345, 94 S.Ct. at 3009. The court justified the distinction between public and private figures because public figures have greater access to the media and can counteract false statements more effectively, and because most public figures have assumed the risk of mistakes being made about them. *See id.* at 344–45, 94 S.Ct. at 3009–10.

In *Time, Inc. v. Firestone,* 424 U.S. 448, 96 S.Ct. 958, 47 L.Ed.2d 154 (1976), the court found that plaintiff Mary Alice Firestone was not a limited purpose public figure regarding her divorce proceedings, despite the fact the divorce was a "cause celebre". *Id.* at 454, 96 S.Ct. at 965. Analyzing Firestone's activities generating publicity, the court found that her "[r]esort to the judicial process * * * is no more voluntary in a realistic sense than that of the defendant called upon to defend his interests in court." *Id.* at 454, 96 S.Ct. at 965 (quoting *Boddie v. Connecticut,* 401 U.S. 371, 376–77, 91 S.Ct. 780, 785–86, 28 L.Ed.2d 113 (1971)). The court also found that the fact Firestone held a few press conferences did not convert her into a public figure. *Firestone,* 424 U.S. at 454–55 n. 3, 96 S.Ct. at 965–66 n. 3. The court also stated:

> [W]hile participants in some litigation may be legitimate "public figures," either generally or for the limited purpose of that litigation, the majority will more likely resemble respondent, drawn into a public forum largely against their will in order to attempt to obtain the only redress available to them or to defend themselves against actions brought by the state or by others. There appears little reason why these individuals should

substantially forfeit that degree of protection which the law of defamation would otherwise afford them simply by virtue of their being drawn into a courtroom.

*Id.* at 457, 96 S.Ct. at 966.

In *Wolston v. Reader's Digest Ass'n, Inc.,* 443 U.S. 157, 99 S.Ct. 2701, 61 L.Ed.2d 450 (1979), the Court held that the plaintiff, a nephew of Russian spies convicted during the 1950's, was not a public figure required to show actual malice on the part of Reader's Digest. Plaintiff was cited for contempt for failing to appear before a grand jury regarding the spy charges against his uncle and aunt. The Court found that while Wolston's failure to go before the grand jury and his contempt citation were newsworthy, Wolston did not engage in the type of behavior converting him to a public figure. The Court concluded: "[Our] reasoning leads us to reject the further contention of respondents that any person who engages in criminal conduct automatically becomes a public figure for purposes of comment on a limited range of issues relating to his conviction." *Id.* at 168, 99 S.Ct. 2708.

Within this state's jurisdiction, the leading case appears to be *Jadwin v. Minneapolis Star and Tribune Company,* 367 N.W.2d 476 (Minn.1985). Jadwin was the promoter, president, and principal shareholder of two companies, Bond Fund and Minnesota Fund Management. As part of an effort to attract sales of a mutual fund, Jadwin placed ads, mailed literature, and issued press releases on the fund. A reporter for the defendant paper investigated Jadwin's business, and in a March 5, 1980 article, the paper criticized Jadwin's companies. When the paper refused to retract certain statements, Jadwin filed a libel suit on behalf of himself and the two corporations organized by him.

The trial court granted summary judgment to plaintiffs, holding that plaintiffs were private figures, but that because the defamatory matter involved an issue of public concern, even a private plaintiff had to show actual malice. *Id.* at 480.

*Gertz,* 418 U.S. at 345, 94 S.Ct. at 3009.

This court reviewed the finding that Jadwin and his companies were private individuals. Analyzing *Gertz,* the court described three categories of public figures: the "rare 'involuntary' public figure;" general purpose public figures; and "limited purpose public figures who attain their position by thrusting themselves into the vortex of a public controversy to influence its outcome." *Id.* at 483–84. Jadwin was not a general purpose or involuntary public figure, and the court found that "though the case is close, we affirm the trial court's finding that Jadwin is not a public figure." *Id.* at 485. Though Jadwin engaged in business actions including attracting media attention, this court held that Jadwin did not perform the types of activities which would transform him into a public figure. "[T]o hold, in effect, that soliciting public investment automatically transforms any small businessman into a public figure would, in our view, expand the category beyond the limits contemplated by *Gertz.* Jadwin at no time met the rationale of access to rebut the alleged libelous publication that is a distinguishing feature between private individuals and public figures." *Id.* at 486. The court did find the companies to be limited purpose public figures. The court stated that on remand, Jadwin, a private individual, could recover upon a showing that the defendant knew or in the exercise of reasonable care should have known that the defamatory statement was false. *Id.* at 491.

In light of these previous cases, we must determine whether Jacobson is a limited purpose public figure required to show actual malice. KWEB argues that Jacobson thrust himself to the forefront of a public controversy, his criminal trial, to influence the resolution. Specifically, KWEB asserts that Jacobson used his access to the media to further his views. Our review of the record indicates that while Jacobson was the subject of numerous articles relating to his trial,[5] Jacobson did not engage in the type of voluntary activity which would support a finding that he is a public figure. His situation is similar to that of the plaintiff in *Firestone,* who was compelled to go to court in order to obtain her divorce.[6] In the present case, Jacobson was required to face the criminal charges pressed against him, and he appeared in court to defend himself. His interview in the paper, although it allowed Jacobson to profess his innocence, was primarily a reaction to this court's decision that day reversing his criminal conviction and granting a new trial. Jacobson took no other actions nor sought any other notoriety; in short, we find that the facts in the present case do not support petitioner's contention that respondent is a voluntary public figure.

Alternatively, KWEB argues that respondent is an involuntary public figure as recognized in *Gertz.* See *Gertz,* 418 U.S. at 345, 94 S.Ct. at 3009. Although one federal circuit court has found a plaintiff a limited purpose public figure; *see Dameron v. Washington Magazine, Inc.,* 779 F.2d 736 (D.C.Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 2247, 90 L.Ed.2d 693 (1986); "the instances of truly involuntary public figures must be exceedingly rare." *Gertz,* 418 U.S. at 345, 94 S.Ct. at 3009. We find that the facts of this case do not support the conclusion respondent is an involuntary public figure. Were we to accept petitioner's argument in this case, we are concerned that such an approach would allow the media to unilaterally create a public figure through excessive coverage of a private person. Such an outcome is inconsistent with the approach enunciated in *Gertz, Firestone,* and *Wolston.* See e.g., *Wolston,* 443 U.S. at 167, 99 S.Ct. at 2707. ("A private individual is not automatically transformed into a public figure just by

---

**5.** In fact, Jacobson obtained a change of venue for his second trial based on the extensive media coverage of his trial in Olmsted County. Eileen Colbenson provided an affidavit in support of the change of venue motion.

**6.** Unlike *Firestone* however, the present case involves the legitimate public concern regarding the outcome of a felony trial and of a defendant who had at one time been convicted by a jury. Although that fact indicates a public controversy was at issue, the Supreme Court's rejection of the issue-oriented test stated in *Rosenbloom* reveals that we must also determine whether Jacobson by his own actions became a public figure.

becoming involved in or associated with a matter that attracts public attention.").

 In reaching our conclusion, we are mindful of the important role the first amendment protection of the press plays in guaranteeing that citizens are informed about the events in their community. As Justice Powell stated in his dissent in *Saxbe v. Washington Post Co.*, 417 U.S. 843, 94 S.Ct. 2811, 41 L.Ed.2d 514 (1974):

> No individual can obtain for himself the information needed for the intelligent discharge of his political responsibilities. For most citizens the prospect of personal familiarity with newsworthy events is hopelessly unrealistic. In seeking out the news the press therefore acts as an agent of the public at large. It is the means by which the people receive that free flow of information and ideas essential to intelligent self-government.

*Id.* at 863, 94 S.Ct. at 2821. (Powell, J., dissenting). A community has a legitimate interest in the outcome of a felony trial, and our decision in no way affects the right to publish truthful information contained in public court records. *See Cox Broadcasting v. Cohn*, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975). We cannot, however, extend that protection to the publication of the statements in this case which are admitted to be inaccurate. *See Firestone*, 424 U.S. at 455, 96 S.Ct. at 965. We hold that respondent Jacobson is a private individual, not a limited purpose public figure, for purposes of this defamation action, and is not required to show actual malice to establish a prima facie case.

Our holding does not imply that a criminal defendant may never become a limited purpose public figure. Although a criminal defendant does not automatically become a public figure, *see Wolston*, 443 U.S. 157, 99 S.Ct. 2701, 61 L.Ed.2d 450 (1979), it is possible that such a defendant by his actions may invite comment sufficient to categorize the defendant as a public figure. *See*

---

7. Although we hold that petitioner is not a public figure, we do find that the news report describing Jacobson's trial and his activities were matters of "undoubted public concern." *See Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 756, 105 S.Ct. 2939, 2944, 86

*e.g. Marcone v. Penthouse Int'l Magazine for Men*, 754 F.2d 1072 (3d Cir.1985) *cert. denied*, —— U.S. ——, 106 S.Ct. 182, 88 L.Ed.2d 151 (1985); *Orr v. Argus-Press Co.*, 586 F.2d 1108 (6th Cir.1978) *cert. denied*, 440 U.S. 960, 99 S.Ct. 1502, 59 L.Ed.2d 773 (1979); *Rosanova v. Playboy Enterprises, Inc.*, 580 F.2d 859 (5th Cir. 1978). In such a case, the actual malice standard would apply.

 The trial court correctly determined that Jacobson is a private plaintiff and on remand should apply the negligence standard for recovery.[7] *See Jadwin*, 367 N.W.2d at 491.

Certified question answered in the negative.

Remanded to trial court.

L.Ed.2d 593 (1985). Upon remand, respondent may not recover presumed or punitive damages absent a showing of actual malice. *See Gertz*, 418 U.S. at 348–49, 94 S.Ct. at 3009–10, *Jadwin*, 367 N.W.2d at 491–2.