**STATE of Minnesota, Respondent,**

v.

**Elizabeth ELLERT, Appellant.**

**Nos. 50458, 50684.**

Supreme Court of Minnesota.

Jan. 16, 1981.

Rehearing Denied Feb. 13, 1981.

Jack Nordby, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Thomas Foley, County Atty., and Steven C. DeCoster, Asst. County Atty., St. Paul, for respondent.

SIMONETT, Justice.

Defendant was found guilty by a district court jury of two counts of aggravated assault (assault with infliction of great bodily harm and assault with a dangerous weapon), Minn.Stat. § 609.225, subds. 1 and 2 (1978), and was sentenced by the trial court to a minimum-maximum prison term of 1 year and 1 day, Minn.Stat. § 609.11 (1978), the trial court expressing its hope that the commissioner of corrections might be able to allow defendant to participate in a work-release program. The sentence has been stayed and defendant released on bail pending the outcome of this appeal. The appeal raises a large number of issues, including claims of (1) insufficiency of evidence, (2) improper admission of evidence, (3) prejudicial misconduct by the prosecutor, and (4) inadequate or erroneous instructions. We affirm.

Defendant and Martin Michalak, the victim, met in 1974 and lived together intermittently until early 1979. On March 9, 1979, Martin married another woman; a few days later, however, on March 12 and 13, he went back and stayed at defendant's residence. On March 14 he returned to live with his new wife; and that same evening defendant brought over some of his personal items, including his guns. After Martin, his wife and the defendant conversed and drank beer for awhile, Martin accompanied defendant to her car to get his things and a

shooting occurred, causing a severe gunshot wound to Martin's left wrist. Defendant claimed the shotgun accidentally discharged as she was preparing to give the gun to Martin. The state claimed intentional assault.

1. The sole issue at trial was defendant's intent. By then Martin was no longer living with his wife and had resumed his friendship with defendant. Although Martin had originally filed a claim with the Crime Reparations Board, he subsequently changed his tack and claimed that the shooting was accidental. He also had commenced a civil suit against defendant for his injuries, in which defendant's insurance company would only be liable to pay for an accidental shooting. Consequently, at trial the victim appeared as a witness for the defense rather than for the state. The state's trial strategy was to not only introduce evidence of defendant's guilt (including the eyewitness testimony of the victim's wife, spontaneous utterances of the victim, and evidence that defendant immediately fled the scene) but also to impeach the victim's credibility.

After reviewing the record, we are satisfied that the state succeeded in its burden of proving defendant guilty and that the jury was justified in concluding that the shooting was intentional.

2. Defendant raises a number of issues on the admissibility of evidence, most of which, however, were not preserved by any objection at trial.

(a) Defense counsel did object to some of the prosecutor's cross-examination of the victim concerning telephone conversations which the prosecutor had with the victim not long after the shooting, the objection being that the prosecutor, because he was the prosecutor, could not testify concerning these communications and yet his leading questions had the effect of being unsworn testimony.

ABA Standards Relating to the Prosecution Function, § 3.1(F) (Approved Draft, 1971), provides that:

Whenever feasible, the prosecutor should avoid interviewing a prospective witness except in the presence of a third person unless the prosecutor is prepared to forego impeachment of a witness by the prosecutor's own testimony as to what the witness stated in an interview or to seek leave to withdraw from the case in order to present his impeaching testimony.

In this case, when it became clear to the prosecutor that the victim would not be testifying for the state but rather for the defense, the prosecutor complied with the rule and had a third-party witness testify to a conversation by the prosecutor with the victim. The questions to which defense counsel objected related to the prosecutor's cross-examining the victim about earlier telephone conversations.

■ It may be that under the circumstances the prosecutor should have withdrawn from the case prior to trial or else foregone using leading questions to cross-examine the victim about the conversations. But we do not believe that the error, if any, was prejudicial. Since there was a basis for the cross-examination, all that a reversal would accomplish would be a new trial at which the state would use a different prosecutor and the defendant would be faced with either not calling the victim, whose testimony was crucial, or calling the victim and having him impeached. *State v. Stofflet*, 281 N.W.2d 494 (Minn.1979).

■ (b) Defense counsel objected to the admission, during the state's case-in-chief, of evidence that the victim, Martin, had filed a claim with the Crime Reparations Board. *See* Minn.Stat. § 299B.14 (1978). While this evidence was improperly admitted during the state's case-in-chief, the evidence clearly would have been admissible in rebuttal to impeach the credibility of the victim, whom defendant had little choice but to call as part of her case, so that any error was harmless.

■ (c) Defense counsel also objected to the trial court's permitting a police officer to testify that it was his opinion, on the basis of knowing defendant and observing her demeanor, that defendant lied to him when she told him the shooting was accidental. We agree the trial court should not have admitted this testimony. *See* Minn.R. Evid. 403 and 701 and *State v. Hines*, 270 Minn. 30, 133 N.W.2d 371 (1964). We conclude, however, that under the circumstances the error here was harmless.

■ (d) The only other evidentiary ruling needing discussion is the trial court's admission of testimony that before Martin accompanied the defendant to her car he told his wife to watch because he was expecting defendant to do something. We hold this evidence was properly admitted on rebuttal to impeach Martin's testimony, on direct examination by defense counsel, that he had not said anything to his wife before he left the house.

■ 3. Most of defendant's claims of prejudicial misconduct by the prosecutor were forfeited by defense counsel's failure to object. We agree with defendant that the prosecutor erred in suggesting that there was collusion between defense counsel and the attorney Martin had retained to represent him in his personal injury claim, but the trial court promptly gave a corrective instruction to cure any error.

■ 4. The only instruction which merits discussion is the trial court's statement at one point that "[i]t is presumed that a person intends his or her voluntary act." A trial court should be extremely careful about using language such as this, but a reversal here on this ground is clearly not mandated by *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). Not only is the statement here distinguishable from that in *Sandstrom*, but the statement was given in the context of other statements which made it clear that the inference of intent from conduct was a permissive inference which the jury was not required to draw. *State v. Ferraro*, 290 N.W.2d 177 (Minn.1980). Moreover, here, unlike *Sandstrom*, defense counsel did not object to the instruction.

Other issues relating to the instructions are answered by our decisions in *State v. Brouillette*, 286 N.W.2d 702 (Minn.1979), and *State v. Schluter*, 281 N.W.2d 174 (Minn.1979).

Affirmed.