**STATE of Minnesota, Respondent,**

v.

**John L. BROWN, Appellant.**

**No. C9–82–1636.**

Supreme Court of Minnesota.

May 18, 1984.

C. Paul Jones, State Public Defender, Kathy King, Asst. State Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III Atty. Gen., Thomas Foley, Ramsey County Atty., St. Paul, for respondent.

COYNE, Justice.

Defendant was charged by indictment in Ramsey County with second-degree intentional murder and third-degree felony murder, Minn.Stat. §§ 609.19 and 609.195, subd. 2 (1980), in the November 23, 1980, shooting death of a clerk in a convenience store during an attempted robbery. The trial jury found defendant not guilty of intentional murder but guilty of felony murder. The trial court sentenced defendant to 100 months in prison, the maximum presumptive sentence for the offense (a severity level IX offense) committed by a person with defendant's criminal history score (zero). On appeal, defendant argues: (1) that his conviction should be reversed outright because the evidence that he committed the offense was legally insufficient; (2) that he should be given a new trial because he was prejudiced by (a) the trial court's erroneous admission of other-crime evidence, (b) the prosecutor's improper impeachment of a state's witness, (c) the trial court's failure to give a limiting instruction concerning the impeachment evidence, and (d) the prosecutor's misconduct in closing argument; or (3) that he should at least be given credit against his sentence for time spent in jail in Illinois awaiting extradition to Minnesota and time spent in jail in Min-

nesota awaiting trial. We affirm defendant's conviction but we remand for a recomputation of the credit for time spent in jail awaiting extradition and trial.

■ 1. Defendant first contends that the evidence of his guilt was legally insufficient. At defendant's trial the state established that (a) the attempted robbery and killing apparently were committed by a black man wearing a black hat and driving a large gold car sometime between 3:10 and 3:20 a.m. on November 23, 1980; (b) defendant appeared at the residence of two acquaintances about a mile from the store around 4:00 a.m. and not only confessed the crime but displayed the murder weapon along with a sawed-off shotgun; (c) defendant then left the shotgun at the next-door residence of his brother's former girl friend; (d) defendant later went to the nearby residence of strangers, where he dropped the murder weapon before the police came; (e) the police, unaware of the gun and of defendant's connection with the murder, took him to the residence of his girl friend's mother; (f) the police later took him from that residence to a mission; and (g) defendant was wearing a hat that generally fit the description of the hat worn by the murderer and was the co-owner of a car that fit the description of the murderer's car. This evidence was sufficient to support defendant's conviction.

2. Defendant makes a number of arguments in support of his contention that his trial was unfair and he should be given a new trial.

■ (a) Defendant first argues that the trial court erred in admitting evidence concerning a gun incident which allegedly occurred at 4:00 p.m. on November 22 at the St. Paul residence of his former girl friend's sister. This evidence was offered by the state in rebuttal after defendant and defense witnesses claimed defendant was in Illinois on that date and had been there since November 8 or 9. Defendant contends that "While the fact that [defendant] was seen with a handgun may have been proper to rebut [defendant's] testimony

that he neither possessed such a gun nor was in town on the 22nd, the details of the possession were unnecessary." We need not decide the point because defendant did not object to the admission of this evidence. Under the circumstances, there being no plain error, defendant is not entitled to have the issue decided on appeal.

■ (b) Defendant next argues that the prosecutor improperly impeached defendant's former girl friend, who was called as a rebuttal witness in the expectation that she would testify, consistent with her statement to the prosecutor, that defendant was in St. Paul on the 22nd. When the witness did not testify as expected, the prosecutor began to use leading questions based on his understanding of her statement to him.

We addressed a similar issue in *State v. Ellert*, 301 N.W.2d 320, 322 (Minn.1981):

Defense counsel did object to some of the prosecutor's cross-examination of the victim concerning telephone conversations which the prosecutor had with the victim not long after the shooting, the objection being that the prosecutor, because he was the prosecutor, could not testify concerning these communications and yet his leading questions had the effect of being unsworn testimony.

ABA Standards Relating to the Prosecution Function, § 3.1(F) (Approved Draft, 1971), provides that:

Whenever feasible, the prosecutor should avoid interviewing a prospective witness except in the presence of a third person unless the prosecutor is prepared to forego impeachment of a witness by the prosecutor's own testimony as to what the witness stated in an interview or to seek leave to withdraw from the case in order to present his impeaching testimony.

In this case, when it became clear to the prosecutor that the victim would not be testifying for the state but rather for the defense, the prosecutor complied with the rule and had a third-party witness testify to a conversation by the prosecutor with the victim. The questions to which defense counsel objected related to the prosecutor's cross-examining the victim about earlier telephone conversations.

It may be that under the circumstances the prosecutor should have withdrawn from the case prior to trial or else foregone using leading questions to cross-examine the victim about the conversations. But we do not believe that the error, if any, was prejudicial. Since there was a basis for the cross-examination, all that a reversal would accomplish would be a new trial at which the state would use a different prosecutor and the defendant would be faced with either not calling the victim, whose testimony was crucial, or calling the victim and having him impeached.

Here, as in *Ellert*, there apparently was a basis for the cross-examination but the prosecutor should have foregone using leading questions, since they had the effect of unsworn testimony. Defense counsel, who only objected to the "form" of the questions, could have stated his objection more precisely. In any event, it is clear that defendant was not prejudiced by the prosecutor's use of leading questions.

· ■ (c) Defendant also claims that the trial court erred in refusing to give a limiting instruction concerning the jury's use of impeachment evidence.

Under the Rules of Evidence, prior inconsistent statements are sometimes admitted substantively. Minn.R.Evid. 801(d)(1)(A) provides that a prior inconsistent statement is not hearsay if the statement was given under oath at a trial, hearing, or other proceeding, or in a deposition and if the declarant testifies and is subject to cross-examination concerning the statement. Since the prior statements used against defendant's former girl friend were not given under oath, they were not admissible substantively under R. 801(d)(1)(A) but were admissible only for impeachment purposes under R. 607, the general rule dealing with impeachment. 11 Thompson, Minn. Practice—*Evidence* § 801.05 (1979); *United States v. Porter*, 544 F.2d 936, 938

n. 2 (8th Cir.1976) (distinguishing between statements admissible as substantive evidence under Fed.R.Evid. 801(d)(1)(A) and statements admissible only to impeach). Under the circumstances, the trial court erred in refusing to give a properly worded limiting instruction. However, the error was not prejudicial, since there was abundant other evidence placing defendant in St. Paul both on November 22 and November 23. *State v. Spencer,* 298 Minn. 456, 216 N.W.2d 131 (1974).

(d) Defendant's final claim of trial error relates to the following statement, which the prosecutor made at the conclusion of his closing argument:

> Ladies and Gentlemen of the Jury, much has been made recently in recent months, and years of the fact that we should have something resembling better law enforcement in this county but the fact of the matter is the police can't enforce the law. All they can do is gather evidence. (The) prosecuting attorney can't enforce the law. All he can do is present evidence to a jury of 12 people. And if we are going to have law enforcement in this country the only way it can come is working and just working as a jury on each and every individual case.

This argument was clearly improper. *See, e.g., State v. Threinen,* 328 N.W.2d 154, 157 (Minn.1983) (disapproving statement in closing argument that jury represents the people of the community and that the verdict would determine what kind of conduct would be tolerated on the streets); *State v. Clark,* 296 N.W.2d 372, 377 (Minn. 1980) (disapproving of argument that suggested jury should keep the crime problem in mind in determining the issue of defendant's guilt); and *State v. Clark,* 291 Minn. 79, 82, 189 N.W.2d 167, 169 (1971) (disapproving of closing argument with "law and order" theme).

█ Ordinarily, defense counsel has a duty to promptly object and ask for a curative instruction when the prosecutor makes improper statements in closing argument. As we indicated in *State v. Bell,* 294 Minn. 189, 192, 199 N.W.2d 769, 771 (1972), carefully worded instructions by the trial court can ameliorate the effect of improper prosecutorial argument. Therefore, a defense counsel's failure to object or to request curative instructions normally weighs heavily in our decision whether or not to reverse on the basis of prosecutorial misconduct in closing argument. The other main factor influencing our decision is the effect of the misconduct on the jury's verdict. As we indicated in *State v. Caron,* 300 Minn. 123, 127, 218 N.W.2d 197, 200 (1974), the more serious the misconduct, the more inclined we will be to conclude that the misconduct influenced the jury in reaching the guilty verdict.

█ We believe that the statement in question constituted misconduct of a serious nature and we would not hesitate to reverse if we believed there was a reasonable possibility the statements significantly influenced the jury in finding defendant guilty. However, given the strong evidence of defendant's guilt, which included evidence connecting the murder weapon to defendant and evidence that defendant confessed to friends shortly after the crimes took place that he committed them, we hold that the error was harmless.

3. Defendant's final contention is that the trial court erred in denying his request for a credit against his sentence for time spent in jail in Illinois awaiting extradition and time spent in jail in Minnesota awaiting trial.

█ Minn.R.Crim.P. 27.03, subd. 4(B), provides automatic credit for "all time spent in custody in connection with the offense or behavioral incident for which sentence is imposed * * *." The state concedes that under the rule and under decisions of this court interpreting it—*see, e.g., State v. Bentley,* 329 N.W.2d 39 (Minn. 1983)—defendant is entitled to credit for time spent in jail in Minnesota awaiting trial. Recently, in *Escobedo v. Oleisky,* 339 N.W.2d 263 (Minn.1983), we held that a juvenile who is certified for prosecution as an adult and then convicted is entitled to credit against his sentence for time spent in the juvenile detention center awaiting certification for prosecution as an adult.

We see no reason why the rationale of the rule and of our cases should not apply to time spent in jail in another state solely in connection with the offense of sentencing while awaiting extradition to Minnesota for prosecution. The cases that we have found support this view. *See, e.g., State v. Mahler,* 128 Ariz. 429, 626 P.2d 593 (1981); *In Re Watson,* 139 Cal.Rptr. 609, 19 Cal.3d 646, 566 P.2d 243 (1977); *Commonwealth v. Bortner,* 230 Pa.Super. 64, 326 A.2d 622 (1974). The cases are collected at Annot., 77 A.L.R.3d 182, § 16(c) (1977). Of course, if part of the time defendant spent in jail in Illinois was in connection with an Illinois charge, he would not be entitled to a credit for that time. *See State v. Bentley,* 329 N.W.2d 39 (Minn.1983) (not entitled to credit for time spent in prison in another state before being paroled to and jailed in Minnesota for trial on Minnesota charges); *Commonwealth v. Bortner,* 230 Pa.Super. 64, 326 A.2d 622 (1974) (entitled to credit for time spent in jail in another state awaiting extradition but not if part of the reason for being held in jail in the other state was because of charge by that state). From the record it is unclear whether part of the time defendant spent in jail in Illinois was in connection with an Illinois charge. Under the circumstances, we remand for a determination of that factual issue by the trial court.

Remanded.