STATE of Minnesota, Respondent,

v.

William Charles PARR, Appellant.

No. C0-87-1074.

Court of Appeals of Minnesota.

Nov. 10, 1987.

Review Denied Jan. 15, 1988.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Chief, Appellate Section, J. Michael Richardson, Asst. Co. Atty., Minneapolis, for respondent.

Barry V. Voss, P.A., Minneapolis, for appellant.

Considered and decided by CRIPPEN, P.J., and FOLEY and LANSING, JJ., with oral argument waived.

## OPINION

FOLEY, Judge.

This is a sentencing appeal in which appellant William Charles Parr contends the trial court erred in determining his jail credit and computing his criminal history score. We affirm.

## FACTS

On February 27, 1985, appellant was indicted by the Suffolk County, New York grand jury and charged with various counts of criminal offenses arising from fraudulent sales of equity interests in two real estate developments in New York. On August 28, 1985, appellant pleaded guilty to three counts of second degree grand larceny and one count of failure to file a state income tax return. At that time, sentencing was scheduled for October 11, 1985. Appellant was informed the length of his sentence would depend on the amount of restitution he made before sentencing and was released on bail.

On September 28, 1985, appellant contacted a college friend from Minnesota to solicit his investment in a third real estate development in New York. In mid-October 1985, appellant came to Minnesota to close the sale. The college friend gave appellant a cashier's check for $35,000, and appellant executed a confirmation of investment which read, in part:

> [C]onfirming our understanding of your investment of $35,000.00 which represents an equity percentage of five percent in the Kingston project. You will receive five percent of the profits and five percent of the ownership. (Signed) W. Parr.

When the college friend later learned appellant used the cashier's check to purchase traveler's checks instead of for the

real estate closing, he telephoned the authorities in New York. He also filed a report with the Edina Police.

Based upon evidence obtained by New York investigators that appellant was intending to leave the country and also upon appellant's commission of another crime, appellant's bail was revoked and a warrant was issued for his arrest. Appellant was arrested on October 18, 1985. The next day, appellant was sentenced on the previously entered pleas as follows:

Count 3 (second degree larceny)—two to six years;

Count 9 (second degree larceny)—one to three years, to run consecutively with Count 3;

Count 10 (second degree larceny)—two to six years, to run consecutively with Count 3;

Count 29 (failure to file a state tax return)—one year, to run concurrently with Count 3.

In February, 1986 appellant was again indicted by the Suffolk County grand jury for attempted second degree grand larceny in connection with fraudulent real estate investments. Appellant pleaded guilty and was sentenced to one year imprisonment, to run consecutively with the sentences previously imposed.

After filing a complaint on October 18, 1985, the Hennepin County Attorney's office took action to bring appellant back to Minnesota. Because appellant refused to waive extradition, Hennepin County filed a writ of execution on October 23, 1985. However, since appellant was sentenced in New York, authorities determined extradition was not appropriate and, instead, the interstate agreement on detainers should be followed. On February 27, 1986, and again on March 27, 1986, Hennepin County sent its request for temporary custody pursuant to the Uniform Disposition of Detainers Act to the New York authorities. None of these actions resulted in appellant's custody transfer to Minnesota.

On August 21, 1986, Hennepin County received a letter from the New York authorities which provided, in part:

I have contacted the inmate to determine if he desired to request a disposition pursuant to Article III of the Agreement, and he informed me that he does not. I am, therefore, scheduling an extradition hearing with the local court immediately * * *.

On October 17, 1986, appellant filed a notice of place of imprisonment and request for disposition of indictments, informations or complaints. Hennepin County obtained custody of appellant on November 13, 1986.

On November 14, 1986, when appellant made his first appearance in Hennepin County District Court, bail was set in the amount of $75,000 and a February 17, 1987, trial date was set. Appellant later pleaded guilty to theft by swindle over $2,500. On March 20, 1987, appellant was sentenced to a 30–month prison term and given 155 days jail credit.

## ISSUES

1. Did the trial court err by determining appellant is not entitled to jail credit on the Minnesota sentence for the time he was incarcerated in New York?

2. Did the trial court err in computing appellant's criminal history score?

## ANALYSIS

The granting of jail credit is not discretionary with the trial court. *State v. Doyle,* 386 N.W.2d 352, 354 (Minn.Ct.App. 1986). Minn.R.Crim.P. 27.03, subd. 4(B), mandates that when a criminal sentence is imposed, the trial court shall

assure that the record accurately reflects all time spent in custody *in connection with the offense or behavioral incident for which sentence is imposed.* Such time shall be automatically deducted from the sentence * * *.

(Emphasis added); *see also* Minn.Stat. § 609.145, subd. 2 (1986) (credit must be given for time served between conviction and sentencing).

Minnesota Sentencing Guidelines III.C provides, in part:

Pursuant to Minn.Stat. § 609.145, subd. 2, and Minn.R.Crim.P. 27.03, subd. 4(b), when a convicted felon is committed to the custody of the Commissioner of Corrections, the Court shall assure that the record accurately reflects all time spent in custody between arrest and sentencing * * * *for the offense or behavioral incident for which the person is sentenced,* which time shall be deducted by the Commissioner of Corrections from the sentence imposed * * *.

(Emphasis added.)

Awards of jail credit are governed by principles of fairness and equity and determined on a case-by-case basis. *See State v. Dulski,* 363 N.W.2d 307, 310 (Minn.1985). Appellant has the burden of establishing he is entitled to jail credit for a specific period of time. *State v. Willis,* 376 N.W.2d 427, 428 n. 1 (Minn.1985).

■ Jail credit is allowed for time spent in another state only when the Minnesota offense was the "sole reason" for incarceration in the foreign jurisdiction. *State v. Mavis,* 405 N.W.2d 547, 549 (Minn.Ct.App. 1987), *rev'd on other grounds,* 409 N.W.2d 853 (Minn.1987) (citing *Willis,* 376 N.W.2d at 428). If part of the time appellant spent in the out-of-state jail was in connection with the out-of-state charge, he would not be entitled to jail credit for that time. *State v. Brown,* 348 N.W.2d 743, 748 (Minn.1984); *see also State v. Bentley,* 329 N.W.2d 39, 40 (Minn.1983) (no jail credit for time spent in prison in another state before being paroled to and jailed in Minnesota for trial on Minnesota charges).

Appellant contends equity dictates he receive jail credit from the date of his arrest on October 18, 1985, through October 17, 1986. Appellant argues but for the pending Minnesota charges, he would not have been taken into custody and, therefore, his incarceration in New York was "in connection with" the behavior giving rise to the sentence eventually imposed by the Minnesota courts.

As support, appellant cites *Brown.* There, the Minnesota Supreme Court held jail credit should be given for "time spent in jail in another state solely in connection with the offense of sentencing while awaiting extradition to Minnesota for prosecution." *Id.* at 748. The *Brown* court found the record was unclear as to whether part of the time the defendant spent in the out-of-state jail was in connection with the out-of-state charge. As a result, the case was remanded to the trial court for a determination of that factual issue. *Id.*

■ Appellant contends because it is impossible to determine when he would have been taken into custody to begin serving his New York sentence, failure to grant him jail credit from October 18, 1985, to October 17, 1986, results in a de facto consecutive sentence. Jail credit is awarded when the sentences imposed by the trial court are concurrent and any delay in executing the sentence on the new offense would result in de facto consecutive sentence. *State v. Koski,* 408 N.W.2d 702, 704 (Minn.Ct.App.1987) (citing *State v. Carson,* 393 N.W.2d 382, 384 (Minn.Ct.App.1986)).

■ This case is similar to *Willis.* There, the defendant committed a murder in Minnesota and then fled to Illinois where he was arrested on an unrelated matter. Minnesota requested extradition, but Illinois detained the defendant pending disposition of his Illinois charges. Willis was acquitted of the Illinois charges in December 1983, and extradited to Minnesota in January 1984. Willis requested jail credit for the entire time he was incarcerated in Illinois. *Id.* at 428.

The Minnesota Supreme Court held Willis was not entitled to jail credit for the time he served before the Minnesota complaint was filed, nor was he entitled to credit for the time he was being held on the Illinois charge and the Minnesota hold. However, Willis was entitled to jail credit for the time between his acquittal on the Illinois charge (December 1983) and his extradition to Minnesota (January 1984), because during that time period the sole reason for his incarceration was the Minnesota hold. *Id.* at 429.

From October 18, 1985 through November 13, 1986, appellant was in jail in New York because of the three-to-nine-year sen-

tence imposed by the New York court. During that time period, the New York authorities were aware that appellant was being sought by Hennepin County. Moreover, appellant was also aware he was being sought by Hennepin County, yet he resisted transfer to Minnesota. The "hold" or detainer lodged by Minnesota had no impact on appellant's custodial status because he was not eligible for bail or parole during that time period.

We find appellant was not being detained "in connection with" the Minnesota offense but as a result of his New York sentences. Thus, the trial court did not err in determining appellant's jail credit.

■ 2. At a sentencing hearing, the state has the burden of establishing the facts necessary to justify consideration of out-of-state convictions in determining a defendant's criminal history score. *State v. McAdoo*, 330 N.W.2d 104, 109 (Minn.1983); Minnesota Sentencing Guidelines II.B.5. The sentencing guidelines provide a defendant will not be assigned more than two points for prior multiple sentences arising out of a single course of conduct in which there were multiple victims. Minnesota Sentencing Guidelines II.B.1.b.

Appellant's criminal history score is comprised of one custody point, three felony points and one point for two gross misdemeanor convictions. Appellant concedes he was given the custody point because he was pending sentencing at the time he committed the Minnesota offense. However, appellant contends the trial court erred in assigning more than two felony points arising from the offenses committed in New York because his conduct was a "single unitary course of conduct," justifying a reduction of one felony point. Appellant argues his behavior began on September 16, 1983, and continued until February 22, 1985, because the investment scheme he used in each case was similar in nature.

Although the sentencing guidelines do not define the term "single course of conduct," comment II.B.103 clarifies the intent of that phrase and provides an illustration of the type of situation to which it applies:

To limit the impact of past variability in prosecutorial discretion, the Commission placed a limit of two points on computing prior multiple felony sentences arising out of a single course of conduct in which there were multiple victims. *For example, if an offender had robbed a crowded liquor store, he could be convicted of and sentenced for the robbery, as well as one count of assault for every person in the store at the time of the offense.* Past variability in prosecutorial charging and negotiating practices could create substantial variance in the number of felony sentences arising from comparable criminal behavior. To prevent this past disparity from entering into the computation of criminal histories, and to prevent manipulation of the system in the future, the Commission placed a limit of two points in such situations. This still allows differentiation between those getting multiple sentences in such situations from those getting single sentences, but it prevents the perpetuation of gross disparities from the past.

The two point limit in calculating criminal history when there are multiple felony sentences arising out of a single course of conduct with multiple victims also applies when such sentences are imposed on the same day.

(Emphasis added.) This comment indicates the two point limitation is intended to apply only to a situation in which a crime or crimes are committed against multiple victims during the course of an incident *which is limited in time and place.*

■ Case law which interprets the phrase "single course of conduct" achieves the same result. In *State v. Banks*, 331 N.W.2d 491 (Minn.1983), the supreme court stated:

[O]ne must analyze the facts and determine whether the offenses arose out of a *continuing and uninterrupted course of conduct,* manifesting an indivisible state of mind or conincident errors of judgment. In deciding whether two or more intentional crimes were part of the same course of conduct, one must *focus on the factors of time and place* and also consider whether the segments of

conduct involved were motivated by an effort to obtain a single criminal objective.

*Id.* at 493 (emphasis added) (citations omitted).

In this case, the crimes occurred over a period of two years. Therefore, the crimes were clearly not limited in time and place. Nor did the crimes in this case arise out of a continuing and uninterrupted course of conduct. As a result, we hold the trial court did not err in computing appellant's criminal history score.

### DECISION

Affirmed.