*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1314**

State of Minnesota,
Respondent,

vs.

Jeffrey Michael Jepson,
Appellant.

**Filed September 8, 2014
Affirmed
Hooten, Judge**

Scott County District Court
File No. 70-CR-12-2347

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Patrick J. Ciliberto, Scott County Attorney, Todd P. Zettler, Assistant County Attorney, Shakopee, Minnesota (for respondent)

Bradford Colbert, Legal Assistance to Minnesota Prisoners, St. Paul, Minnesota (for appellant)

        Considered and decided by Johnson, Presiding Judge; Hooten, Judge; and Harten, Judge.[*]

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**HOOTEN**, Judge

Appellant challenges his conviction and sentence for failure to register as a predatory offender, arguing that he is not required to register and that the district court incorrectly calculated his criminal-history score. We affirm.

## FACTS

Appellant Jeffrey Jepson pleaded guilty in March 1990 to, and was convicted of, second-degree criminal sexual conduct committed in Dakota County. On July 23, 1990, the district court stayed imposition of Jepson's sentence and placed him on probation for 15 years. As one of the conditions of his probation, Jepson was required to remain law-abiding. In March 1995, Jepson pleaded guilty to, and was sentenced for, three counts of third-degree burglary in Dakota County. Because he was still on probation for the second-degree criminal sexual conduct charge, the district court determined that Jepson violated a condition of his probation and sentenced him to a year and a day in prison relative to that charge, which was to run concurrently with his sentence for the third-degree burglary convictions.

In April 1995, Jepson was charged in Washington County with 13 counts of third-degree burglary and one count of receiving stolen property. Jepson pleaded guilty to three counts of receiving stolen property in May 1994 in violation of Minn. Stat. § 609.53, subd. 1 (1992). All other counts were dismissed. While establishing the factual basis for his plea, Jepson admitted that he possessed stolen property obtained from burglaries of a model home on May 17 and of an unoccupied dwelling on May 18.

2

Jepson also admitted that the items in his possession were stolen from "at least two different homes" and that he possessed items stolen "out of the other lists of burglaries that [he] was charged with." All of the stolen items were found at Jepson's home.

Jepson also agreed that the convictions would be sentenced at a severity level of 4:

> [DEFENSE COUNSEL]: Mr. Jepson, you understand one of the essential ingredients of a receiving stolen property charge to make it a severity level four is that the prosecution would have to prove that the value of the property exceeded $500. And you're making that concession that they could do that?
>
> THE DEFENDENT: Yes.
>
> . . . .
>
> THE COURT: I think that it's clear in my mind that Mr. Jepson had items of personal property that he knew were stolen that came from different homes that were all in excess of $500, and so I will accept his guilty plea . . . .

The district court's sentencing orders reflect that Jepson was convicted under Minn. Stat. § 609.53, subd. 1, and Minn. Stat. § 609.52, subd. 3(2) (1992).

Upon Jepson's release from prison in October 1996, Jepson registered as a predatory offender with the Bureau of Criminal Apprehension. Jepson continued to register through 2011, but then stopped. In March 2012, Scott County charged Jepson with two felony counts, failure to register a new primary address and failure to register an address on a change of employment, in violation of Minn. Stat. § 243.166, subd. 5(a) (2010). Jepson agreed to a bench trial on stipulated facts and was convicted of both counts. The district court used a criminal-history score of six and sentenced Jepson to 36 months' imprisonment.

Jepson appealed his conviction of failure to register. While the appeal was pending, we granted Jepson's motion to stay appellate proceedings so that he could challenge his criminal-history score before the district court. The district court determined that Jepson's criminal-history score incorrectly accounted for decayed charges. But the district court found that only one of Jepson's three convictions of receiving stolen property was used in the initial calculation. Accordingly, the district court determined that Jepson's three convictions of receiving stolen property were worth a total of three points. This adjustment balanced out the other incorrect calculations, and the district court determined that a criminal-history score of six remained correct. Subsequently, we dissolved the stay and reinstated Jepson's appeal.

## D E C I S I O N

## I.

Jepson challenges his convictions for failure to register as a predatory offender, arguing that he is not required to register under the applicable statute.[1] Whether a statute has been properly construed is a question of law subject to de novo review. *State v. Murphy*, 545 N.W.2d 909, 914 (Minn. 1996).

---

[1] The state contends that Jepson cannot challenge his obligation to register as a predatory offender because he should have made the challenge to the Department of Corrections in 1996 when he first registered. The state is correct that a person may bring a declaratory action against the Commissioner of Corrections to challenge the registration requirement. *See, e.g.*, *Boutin v. LaFleur*, 591 N.W.2d 711, 714 (Minn. 1999). But this is not the exclusive method to challenge a registration requirement. We note that in *State v. Lopez*, the supreme court addressed the merits of a challenge to the registration requirement on a direct appeal from a conviction for failure to register. 778 N.W.2d 700, 703 (Minn. 2010). Therefore, we conclude that Jepson's challenge is properly before us.

A person "shall" register as a predatory offender if "the person was charged with . . . and convicted of" criminal sexual conduct. *See* Minn. Stat. § 243.166, subd. 1b (2010). "[T]he statute applies to offenders released from prison after August 1, 1991, regardless of the date of the offense." *State v. Manning*, 532 N.W.2d 244, 247 (Minn. App. 1995), *review denied* (Minn. July 20, 1995). Accordingly, Jepson is required to register because he was charged with and convicted of criminal sexual conduct and was released from prison in 1996.

Jepson argues that he is not required to register under the 1991 original version of the registration statute. Under Minn. Stat. § 243.166, subd. 1 (Supp. 1991), a person "shall" register as a predatory offender if "the person was sentenced to imprisonment following a conviction for . . . criminal sexual conduct." This version is narrower than the 2010 and current versions of the statute because it required "imprisonment following a conviction" to trigger the registration obligation, rather than just a charge and conviction. *Compare* Minn. Stat. § 243.166, subd. 1b (2010), *with* Minn. Stat. § 243.166, subd. 1 (Supp. 1991). Jepson therefore contends that he is not required to register under the 1991 statute because he was sentenced to imprisonment "following" his probation revocation, not "following" his conviction.

But Jepson fails to explain why we should consider the 1991 registration statute instead of the version under which he was convicted. In reviewing a conviction for failure to register, we use the statute in effect at the time of the offense. *See Starkweather v. Blair*, 245 Minn. 371, 387, 71 N.W.2d 869, 880 (1955) (stating that "the Legislatures of the several states, shall not pass laws, after a fact done by a subject, or citizen, which

5

shall have relation to such fact, and shall punish him for having done it" (quotation omitted)); *Manning*, 532 N.W.2d at 246–47 (applying the 1993 version of the registration statute, where the defendant was convicted of criminal sexual conduct in 1988, began registering in July 1992, and failed to register in January 1994). Here, Jepson failed to register on or about January 2012. The statute in effect at the time of his offense required registration by a defendant charged with and convicted of criminal sexual conduct and released from prison after August 1, 1991.

Accordingly, the 2010 version of the statute, not the 1991 version, was in effect at the time of Jepson's failure-to-register offense. Because there is no merit to Jepson's argument that the earlier version of the statute applies, it is not necessary for us to address Jepson's statutory interpretation of an inapplicable statute.

**II.**

Jepson argues that the district court incorrectly calculated his criminal-history score. The district court's determination of a criminal-history score will not be reversed absent an abuse of discretion. *State v. Stillday*, 646 N.W.2d 557, 561 (Minn. App. 2002), *review denied* (Minn. Aug. 20, 2002). The interpretation of sentencing guidelines is subject to de novo review. *State v. Zeimet*, 696 N.W.2d 791, 793 (Minn. 2005).

A defendant's criminal-history score is comprised, in part, on the defendant's prior felony record. Minn. Sent. Guidelines 2.B (Supp. 2011). A defendant is "assigned a particular weight for . . . every felony conviction for which a felony sentence was stayed or imposed before the current sentencing." *Id.* 2.B.1. Generally, "[t]he severity level to be used in assigning weights to prior offenses shall be based on the severity level ranking

6

of the prior offense of conviction that is in effect at the time the offender commits the current offense." *Id.* But "when a monetary threshold determines the offense classification, the monetary classification in effect at the time the prior offense was committed, not the current threshold, determines the offense classification in calculating the criminal history index." *Id.* 2.B. Accordingly, we use the 2011 version of the sentencing guidelines in considering non-monetary-threshold aspects of Jepson's convictions for failure to register because Jepson failed to register in approximately January 2012. But we use the 1993 version of the sentencing guidelines in determining the criminal-history weight assigned to Jepson's convictions of receiving stolen property because he committed those offenses in May 1994.

Jepson argues that "each of [his] receiving property convictions should have been assigned a weight of .5" because "although [he] agreed in his plea agreement that the charges could be sentenced as a severity level four offense, the actual value of the property was unquestionably over $500, not over $2,500." Jepson bases this argument on the assertion that "[t]he offense of receiving stolen property where the amount is less than $5,000[] is a severity level 2 offense."

But Jepson fails to persuade us that the monetary amount of the stolen property makes a difference. It is unclear which version of the sentencing guidelines Jepson relies on in asserting that the offense of receiving stolen property worth less than $5,000 is a severity-level-2 offense carrying a weight of .5. But while this assertion is correct under the 2011 version of the sentencing guidelines, *see* Minn. Sent. Guidelines 2.B.1.a & 5 (Supp. 2011), we must, as stated, apply the 1993 version of the sentencing guidelines in

considering Jepson's convictions of receiving stolen property. And the 1993 guidelines assign a severity level of 3 for receiving stolen property worth $2,500 or less and a severity level of 4 for receiving stolen property worth more than $2,500. *See* Minn. Sent. Guidelines V (Supp. 1993). Offenses with severity levels of 3 to 5 are each assigned a weight of 1 point. *See* Minn. Sent. Guidelines II.B.1.a (Supp. 1993). So regardless of the monetary value of Jepson's stolen property, each of his three convictions is worth 1 point under the applicable sentencing guidelines.[2]

Jepson complains that we should not ignore the "reality" that, in his plea colloquy, he admitted to receiving stolen property worth more than $500, not more than $2,500. But the reality is that Jepson was convicted of receiving stolen property worth more than $2,500. And, even if the monetary value matters, "[t]he offense severity level is determined by the offense of conviction." Minn. Sent. Guidelines II.A (Supp. 1993). Jepson was convicted under Minn. Stat. § 609.52, subd. 3(2) (1992), which provided that "[w]hoever commits theft may be sentenced . . . to imprisonment for not more than ten years or to payment of a fine of not more than $20,000, or both, *if the value of the property or services stolen exceeds $2,500*." (Emphasis added.) Accordingly, a severity level of 4 was correctly assigned to Jepson's convictions of receiving stolen property worth more than $2,500.

For the purposes of reviewing the criminal-history score related to Jepson's Scott County convictions of failure to register, it is irrelevant that the parties and the district

---

[2] For the same reasons, Jepson's argument in his pro se brief based on the 2012 sentencing guidelines is without merit.

court referred to $500 as the monetary value of the stolen property during Jepson's plea for his Washington County convictions of receiving stolen property. This appeal from Jepson's Scott County convictions is not a proper vehicle for him to challenge the sufficiency of the factual basis supporting his Washington County convictions. Because an offense's severity level is determined by the offense of conviction, we are without authority to look behind the conviction in determining the severity level.

Jepson also invokes the rule that "[o]nly the two offenses at the highest severity levels are considered for prior multiple sentences arising out of a single course of conduct in which there were multiple victims." Minn. Sent. Guidelines 2.B.1.d (2011). Jepson contends that "[t]here is no question that [his] three convictions for receiving stolen property arose out of a single course of conduct—all the property was found at a single time in a single location." But we are not persuaded that the discovery of the stolen items at Jepson's home is dispositive as to whether the offenses arise out of a single course of conduct. *Cf. State v. Halverson*, 373 N.W.2d 618, 620 (Minn. App. 1985) ("The fact that [a defendant] had possession of the items at the same time when a search warrant was later executed does not change the offenses into a single behavioral incident for purposes of Minn. Stat. § 609.035").

The sentencing guidelines' "two-point limitation is intended to apply only to a situation in which a crime or crimes are committed against multiple victims during the course of an incident *which is limited in time and place*." *State v. Parr*, 414 N.W.2d 776, 780 (Minn. App. 1987), *review denied* (Minn. Jan. 15, 1988). Here, Jepson obtained the stolen property on two dates and from at least two homes. And he admitted that the

stolen items were obtained from the 13 charged burglaries. Accordingly, the district court did not err by determining that Jepson's offenses arose from separate courses of conduct, and it did not abuse its discretion in determining Jepson's criminal-history score.

**Affirmed.**