*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0539**

State of Minnesota,
Respondent,

vs.

Armando Jesus Pedraza,
Appellant.

**Filed March 23, 2015
Affirmed
Larkin, Judge**

Polk County District Court
File No. 60-CR-08-756

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Greg Widseth, Polk County Attorney, Scott A. Buhler, Assistant County Attorney, Crookston, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Andrea Barts, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Johnson, Presiding Judge; Halbrooks, Judge; and Larkin, Judge.

**LARKIN**, Judge

Appellant challenges his conviction of first-degree sale of a controlled substance, arguing that the state violated his speedy-trial and due-process rights. He also challenges his sentence, arguing that the district court erred by denying his request for out-of-state jail credit. Because appellant did not preserve his speedy-trial and due-process arguments for appeal, we do not address the merits of those arguments. And because the district court did not err by denying appellant's request for jail credit, we affirm.

## FACTS

In March 2005, undercover law-enforcement agents in Polk County conducted two controlled buys of more than 80 grams of cocaine from a group of individuals, which included appellant Armando Jesus Pedraza. In January 2006, Minnesota law-enforcement agents interviewed Pedraza at a prison in Texas, where he was incarcerated for another drug offense. In July, the State of Texas convicted Pedraza of first-degree controlled-substance crime and sentenced him to serve 15 years in prison.

On March 21, 2008, respondent State of Minnesota charged Pedraza with conspiracy, first-degree sale of a controlled substance, first-degree possession of a controlled substance, and importing a controlled substance across state borders based on the 2005 controlled buys. On February 1, 2013, Polk County placed a detainer on Pedraza for the 2008 charges. In March 2013, Pedraza was paroled in Texas, held on the Minnesota detainer, and transferred to Minnesota. He made his first appearance in Polk County District Court on April 1, 2013.

On April 11, 2013, Pedraza filed a pro se motion to dismiss his Minnesota charges, alleging a violation of his constitutional right to a speedy trial. On May 8, Pedraza's court-appointed attorney also filed a motion to dismiss, listing the following four grounds for relief:

> 1. Dismissing the charges pursuant to Minn. R. Crim. P. 30.02[;][1]
> 2. Dismissing the charges pursuant to M.S.A. § 631.21[;][2]
> 3. Dismissing the charges for violating the defendant's Fifth Amendment Right to Due Process under the law (delay)[; and]
> 4. Dismissing the charges pursuant to M.S.A. § 629.292 and M.S.A. § 629.294 for violating the defendant's rights under the Uniform Mandatory Disposition of Detainers Act and Interstate Agreement on Detainers.

At the motion hearing on July 8, Pedraza's attorney withdrew the first and third grounds for dismissal, as follows.

> [DEFENSE COUNSEL]: And essentially this motion is going to be with regards to numbers one and three on the motion, notice of motion and motion that I filed. It's with regards to the Uniform Mandatory Disposition Detainers Act. . . .
> [PROSECUTOR]: . . . . I just want to make sure, number one and number three we're talking about?
> THE COURT: Looks like number four is the one that relates to --
> [DEFENSE COUNSEL]: Wait. I just shut my file on it here. I think I said it backwards. It was two and four. I apologize.
> . . . .

---

[1] Rule 30.02 permits the district court to dismiss a complaint "if the prosecutor has unnecessarily delayed bringing the defendant to trial." Minn. R. Crim. P. 30.02.

[2] Section 631.21 permits the district court to "order dismissal of [a criminal] action either on its own motion or upon motion of the prosecuting attorney and in furtherance of justice." Minn. Stat. § 631.21 (2014).

[DEFENSE COUNSEL]: Your Honor, it would be numbers two and four that I would be arguing.

THE COURT: So are you withdrawing numbers one and three?

[DEFENSE COUNSEL]: Yes.

THE COURT: So we'll note that on the motion arguments number one and number three are withdrawn. We're proceeding on number two and number four.

Defense counsel's memorandum in support of dismissal identified the issue to be determined as follows: "It is Mr. Pedraza's position that, because he did not receive notice of the charges filed in Minnesota while he was incarcerated in Texas, the Minnesota charges should be dismissed with prejudice." The prayer for relief states, "[Pedraza] respectfully requests that the court finds that the State denied Mr. Pedraza rights under the Interstate Agreement on Detainers. Therefore, the charges against Mr. Pedraza must be dismissed with prejudice." Even though defense counsel had withdrawn Pedraza's request for relief on speedy-trial and due-process grounds, her district court memorandum briefly addressed those theories. The state's responsive memorandum discussed the Interstate Agreement on Detainers but did not address Pedraza's speedy-trial and due-process arguments, noting that defense counsel had withdrawn those issues.

On August 5, the district court issued a written order, denying the motion to dismiss. The order notes that at the motion hearing, "the defense withdrew its motions to dismiss the charges pursuant to [Pedraza's] due process rights under the Fifth Amendment and pursuant to Minnesota Rule of Criminal Procedure 30.02" and that "the defense's remaining motions are to dismiss the charges pursuant to the Uniform

4

Mandatory Disposition of Detainers Act/Interstate Agreement on Detainers and pursuant to Minnesota Statute § 631.21." The district court's supporting memorandum indicates that it considered and determined Pedraza's motion to dismiss solely under the Uniform Mandatory Disposition of Detainers Act and Interstate Agreement on Detainers and section 631.21. The district court did not consider or determine whether Pedraza's speedy-trial and due-process rights were violated.

At a hearing on August 26, Pedraza's attorney informed the district court that there had been a "breakdown in communication" and that a new attorney would be appointed to represent Pedraza. She also stated:

> I would put on the record that Mr. Pedraza does desire to – I filed a couple of – well I filed one motion on his behalf at the omnibus stage. He had filed some motions himself and he would like the Court to consider allowing him to have an opportunity once his new attorney is appointed to address those arguments. Ah, and I believe that he also would like to address the Court today.

The state opposed the request, arguing that Pedraza's pro se motion was not properly before the district court unless he elected to represent himself. Pedraza attempted to address the district court directly, but the district court did not allow him to do so. The district court continued the case for "calendar call" on September 6.

On September 6, Pedraza appeared with a new court-appointed attorney. Pedraza's new attorney did not raise the speedy-trial and due-process issues that Pedraza's first attorney had withdrawn. Nor did the attorney pursue Pedraza's pro se motion to dismiss for lack of speedy trial. Instead, the parties informed the district court that Pedraza was willing to resolve his case with a court trial. Although the parties

5

initially informed the district court that the case would be resolved under Minn. R. Crim. P. 26.01, subd. 4, Pedraza's attorney later stated that "it would be in a sense more under subd. 3 of 26.01 than subd. 4. We could do it under subd. 3 and subd. 4."[3]

The district court found Pedraza guilty of first-degree sale of a controlled substance and sentenced him to serve 122 months in prison with 304 days of jail credit. The district court denied Pedraza's request for 2,111 days of jail credit, which was based on time that he served in Texas. This appeal follows.

## DECISION

Pedraza argues that (1) the delay in charging violated his right to due process, (2) the delay in bringing him to trial violated his right to a speedy trial, and (3) he should have received jail credit for the time he spent imprisoned in Texas after Minnesota charged him. The state responds that Pedraza's first and second arguments are not properly before this court because the district court did not determine those issues and that the district court did not err in denying Pedraza's request for jail credit.

---

[3] We note that subdivisions 3 and 4 of Minn. R. Crim. P. 26.01 differ significantly. Subdivision 3 permits the defendant and prosecutor to "agree that a determination of defendant's guilt . . . may be submitted to and tried by the court based on stipulated facts." Minn. R. Crim. P. 26.01, subd. 3(a). If the district court finds the defendant guilty, he may "raise issues on appeal as from any trial to the court." *Id.*, subd. 3(e). Subdivision 4, on the other hand, permits the parties to "agree that the court's ruling on a specified pretrial issue is dispositive of the case, or that the ruling makes a contested trial unnecessary." *Id.*, subd. 4(a). "The defendant must stipulate to the prosecution's evidence in a trial to the court," and must "acknowledge that appellate review will be of the pretrial issue, but not of the defendant's guilt, or of other issues that could arise at a contested trial." *Id.*, subd. 4(e)(f).

## I.

We first determine whether Pedraza's speedy-trial and due-process arguments were preserved for appeal. Generally, an appellate court does not consider issues that were not raised and determined in the district court, even issues of constitutional procedure in a criminal case. *Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996). "It is an elementary principle of appellate procedure that a party may not raise an issue or argument for the first time on appeal and thereby seek appellate relief on an issue that was not litigated in the district court." *Doe ex rel. Doe v. Columbia Heights Sch. Dist.*, 842 N.W.2d 38, 42 (Minn. App. 2014). "Furthermore, an appellant may not 'obtain review by raising the same general issue litigated below but under a different theory.'" *Id.* at 42-43 (quoting *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988)). "As a consequence, this court may consider only those issues that the record shows were presented and considered by the trial court in deciding the matter before it." *Id.* at 43 (quotation omitted). If an appellant "fails to preserve an argument or issue in district court proceedings, the issue or argument is forfeited and may not be asserted in appellate court." *Id.*

Because the speedy-trial and due-process issues were not litigated and determined in the district court, we normally would not consider them for the first time on appeal. However, "[a]n exception arises if the issue is dispositive of the entire controversy, and there is no advantage or disadvantage to the parties in not having a prior decision by the trial court." *State v. Coleman*, 661 N.W.2d 296, 299 (Minn. App. 2003) (quotation omitted), *review denied* (Minn. Aug. 5, 2003). Moreover, "[o]n appeal from a judgment,

7

the court may review any order or ruling of the district court or any other matter, as the interests of justice may require." Minn. R. Crim. P. 28.02, subd. 11. For the reasons that follow, we decline to make an exception in this case or to grant review in the interests of justice.

Pedraza's speedy-trial and due-process arguments require a delicate balance of case-specific facts. *See Barker v. Wingo*, 407 U.S. 514, 522, 92 S. Ct. 2182, 2188 (1972) ("The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances.") (quotation omitted); *United States v. Marion*, 404 U.S. 307, 325, 92 S. Ct. 455, 465-66 (1971) (stating that whether a pre-indictment delay violated a defendant's due-process rights "will necessarily involve a delicate judgment based on the circumstances of each case"). When assessing whether the right to speedy-trial was violated, courts must consider (1) the length of the delay, (2) the reason for the delay, (3) whether the defendant asserted his right to a speedy trial, and (4) whether the delay prejudiced the defendant. *State v. Windish*, 590 N.W.2d 311, 315 (Minn. 1999). "To establish a violation of the due process clause due to pre-indictment delay, a defendant must prove both actual prejudice and an improper state purpose." *State v. F.C.R.*, 276 N.W.2d 636, 639 (Minn. 1979). The fact of a delay alone, even when it results in a higher criminal-history score and longer sentence, is not enough to establish an improper state motive. *State v. Lussier*, 695 N.W.2d 651, 656 (Minn. App. 2005), *review denied* (Minn. July 19, 2005).

8

Because Pedraza's attorney withdrew the speedy-trial and due-process issues, the district court did not develop a factual record necessary for resolution of those issues.[4] Moreover, because the issues were withdrawn, the state did not have an opportunity to develop a factual record in district court supporting its position. And because the district court did not determine the issues, the state did not brief them on appeal. For those reasons, allowing Pedraza to raise the issues on appeal would prejudice the state. Under the circumstances, consideration of appellant's speedy-trial and due-process arguments is neither possible nor appropriate.

Pedraza's arguments to the contrary are unavailing. For example, Pedraza argues that "[it] is clear . . . that [he] proceeded with a stipulated facts trial pursuant to Minn. R. Crim. P. 26.01, subd. 3," noting that defense counsel informed the district court that "the procedure in handling it in this respect would still preserve all issues of appeal for Mr. Pedraza." That argument does not establish that the speedy-trial and due-process issues are preserved for appeal because regardless of the procedure used, the district court did not consider or determine the merits of those issues.

Pedraza also argues that he never "waived or forfeited" his rights to speedy trial or due process. He asserts that "defense counsel . . . never waived [his] Sixth Amendment right to speedy trial" and that his "Fifth Amendment right to due process was not validly waived by his defense counsel." Those arguments miss the mark. The issue is not whether Pedraza or his attorneys waived his constitutional rights to a speedy trial and due

---

[4] Pedraza argues that "the facts necessary to review these claims are in the record." But this court is not a fact finding court. *See State v. Colvin*, 645 N.W.2d 449, 453 (Minn. 2002) (stating that appellate courts have "no . . . business finding facts").

process. The issue is whether Pedraza preserved his arguments that those rights were violated.

Moreover, Pedraza is mistaken to the extent that he suggests that his attorney could not withdraw his request for dismissal on speedy-trial and due-process grounds without his personal waiver. In a criminal case, clients are allowed to make certain decisions related to the trial process, such as whether to plead guilty, waive a jury trial, or testify on one's own behalf. *State v. Rosillo*, 281 N.W.2d 877, 879 (Minn. 1979). But decisions regarding which motions to pursue are for lawyers. *See id.* (listing a decision regarding "what trial motions should be made" as a strategic and tactical decision within the "exclusive province of the lawyer" (quotation omitted)). Even decisions involving constitutional challenges may constitute trial strategy. *See Thomas v. United States*, 737 F.3d 1202, 1209 (8th Cir. 2013) ("[T]he decision whether to move to dismiss for a speedy trial violation is a tactical decision of trial strategy.").

We recognize that Pedraza filed a pro se motion to dismiss for violation of his constitutional right to a speedy trial and that his first defense attorney indicated that he wanted to litigate his pro se motions stating, "He had filed some motions himself and he would like the Court to consider allowing him to have an opportunity once his new attorney is appointed to address those arguments." But when Pedraza appeared before the district court with his new attorney, that attorney did not raise the speedy-trial issue or attempt to litigate Pedraza's pro se motion. Pedraza does not cite authority indicating that the district court was required to rule on his pro se motion even though he was represented by an attorney and his attorney did not pursue the motion. In fact, caselaw

provides that a defendant does not have a right to hybrid representation, that is, a combination of self-representation and attorney representation. *See McKaskle v. Wiggins*, 465 U.S. 168, 183, 104 S. Ct. 944, 953 (1984) ("A defendant does not have a constitutional right to choreograph special appearances by counsel. Once a pro se defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be presumed to be with the defendant's acquiescence, at least until the defendant expressly and unambiguously renews his request that standby counsel be silenced."); *United States v. Swinney*, 970 F.2d 494, 498 (8th Cir. 1992) (stating that a defendant "does not have a constitutional right to hybrid representation" and "cannot demand the right to act as co-counsel").

In conclusion, because Pedraza's speedy-trial and due-process arguments were not considered and determined by the district court and the circumstances do not justify departure from the general rule prohibiting this court from considering issues for the first time on appeal, we do not consider the merits of those arguments.

## II.

Pedraza argues that he "must be awarded custody credit for the time he spent incarcerated in Texas after he was charged in [Minnesota] to avoid his sentence being consecutive and to correct the inequities in this case."

"The decision to award custody credit is not discretionary with the district court." *State v. Johnson*, 744 N.W.2d 376, 379 (Minn. 2008). The district court, when sentencing a defendant, "[s]hall assure that the record accurately reflects all time spent in custody in connection with the offense or behavioral incident for which sentence is

11

imposed. Such time shall be automatically deducted from the sentence . . . ." Minn. R. Crim. P. 27.03, subd. 4(B). "A district court's decision whether to award credit is a mixed question of fact and law; the court must determine the circumstances of the custody the defendant seeks credit for, and then apply the rules to those circumstances." *Johnson*, 744 N.W.2d at 379.

"A defendant has the burden of establishing that he is entitled to jail credit for a specific period of time." *State v. Bradley*, 629 N.W.2d 462, 464 (Minn. App. 2001), *review denied* (Minn. Aug. 15, 2001). "Jail credit is allowed for time spent in another state only when the Minnesota offense was the *sole* reason for incarceration in the foreign jurisdiction." *State v. Parr*, 414 N.W.2d 776, 779 (Minn. App. 1987) (emphasis added) (quotation marks omitted), *review denied* (Minn. Jan. 15, 1988). "If part of the time [a defendant] spent in the out-of-state jail was in connection with the out-of-state charge, he would not be entitled to jail credit for that time." *Id.* (citing *State v. Brown*, 348 N.W.2d 743, 748 (Minn. 1984), *abrogated on other grounds by State v. Ramey*, 721 N.W.2d 294 (Minn. 2006)).

For example, in *State v. Bentley*, the defendant was jailed in North Dakota when Minnesota charged him with an offense. 329 N.W.2d 39, 39-40 (Minn. 1983). He was eventually paroled by North Dakota and transferred to Minnesota, where he was jailed until his sentencing on the Minnesota offense. *Id.* at 40. The supreme court held that the defendant was "not entitled to credit for time spent in prison in North Dakota before he was paroled to Minnesota authorities" but should have received credit for the time between his North Dakota parole and Minnesota sentencing. *Id.* Likewise, in *State v.*

12

*Willis*, the supreme court held that the defendant was "not entitled to any credit . . . against his Minnesota sentence" for time he spent incarcerated in Illinois for charges unrelated to his Minnesota offenses. 376 N.W.2d 427, 428-29 (Minn. 1985).

Pedraza argues that his case is analogous to *State v. Folley*, 438 N.W.2d 372 (Minn. 1989), and *State v. Zaycheck*, 386 N.W.2d 294 (Minn. App. 1986). Those cases are inapposite because they involved jail credit for another Minnesota offense, and not an out-of-state offense. *See Folley*, 438 N.W.2d at 373-75 (applying rule "where the State of Minnesota is a party to both charges"); *Zaycheck*, 386 N.W.2d at 295-96 (involving sentence for Ramsey County offense charged while defendant was "already incarcerated in Stillwater State Prison"). Moreover, the courts in *Folley* and *Zaycheck* relied on *State v. Dulski*, 363 N.W.2d 307 (Minn. 1985). *Folley*, 438 N.W.2d at 374; *Zaycheck*, 386 N.W.2d at 296. The Minnesota Supreme Court has said that it is reversible error to rely on *Dulski* to decide a jail-credit issue involving incarceration outside of Minnesota. *State ex rel. Linehan v. Wood*, 397 N.W.2d 341, 342 (Minn. 1986). Instead, *Willis*, *Brown*, and *Bentley* control whether a defendant is entitled to credit for time served outside of Minnesota. *Id.*

Under Minnesota caselaw, Pedraza is entitled to Minnesota jail credit for his Texas incarceration only if he was incarcerated in Texas solely in connection with his Minnesota offense. The record indicates that Pedraza was not incarcerated in Texas pending his transfer to Minnesota after he was paroled. The prosecutor informed the district court that Pedraza "wasn't held in the State of Texas pending extradition back to Minnesota. We picked him up the date that he was discharged from custody in the State

13

of Texas." On that point, Pedraza merely contested the date on which Minnesota authorities picked him up in Texas.[5] Because it is undisputed that Pedraza was not incarcerated in Texas solely in connection with his Minnesota offense, he is not entitled to the requested jail credit.

**Affirmed.**

---

[5] The state argued that the date was March 31, 2013. Pedraza argued that it was March 12. The district court resolved the dispute by awarding Pedraza credit for 30 days in March, beginning on March 2.